05-16-2018

FILED

©Susan Ganiere™, Subrogee and
Authorized Representative of
©SUSAN GANIERE™ ESTATE, ENS LEGIS
In care of: Post Office Box 4374
Orange, California (near) [92863]
Defendant

2018 MAY 16  PM 2: 33

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY ___ law___

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION – ORANGE COUNTY [SANTA ANA]

| | |
|---|---|
| **BRECKENRIDGE PROPERTY FUND 2016, LLC** <br><br> Plaintiffs <br><br> vs. <br><br> ꞁSusan Ganiere <br><br><br> **And DOES 1-10** <br><br> Defendants | Case No.:  **SACV18-00864 CJC (DFMx)** <br><br> Case No.: **30-2018-00984614-CL-UD-NJC** <br><br> REMOVAL FROM ORANGE COUNTY SUPERIOR COURT <br><br> [TRIAL BY JURY DEMANDED] <br><br> **NON-STIPULATION TO MAGISTRATE** <br><br> **JUDGE AND/OR LOCATION OUTSIDE** <br><br> **ORANGE COUNTY** |

## DEFENDANTS' NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT a Notice of Removal of this action was filed in the UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION – ORANGE COUNTY [SANTA ANA].

Defendant, ©Susan Ganiere™ Subrogee and Authorized Representative of ©SUSAN GANIERE™ ESTATE, herein gives Notice that, pursuant to 28 U.S.C. §§1443, 1446, & 1447(b), FDCPA 15 U.S.C. § 1692a(6) and Section 1692f(6) she removed this case to the United States District Court for the Central District of California, Southern Division – Orange County [Santa Ana], on grounds that the Defendant's federally secured due process rights

*Notice of Removal of Action, 28 U.S.C. §1332, 1441, 1443, & 1446*    –1–

guaranteed by the First, Fifth, Seventh, Ninth, and Fourteenth Amendments to the Constitution, 42 U.S.C. §§§1981, 1982 and 1983 are being directly and systematically impaired and infringed by unconstitutional statutory laws and customs, practices, local rules and policies having the force and effect of law in the STATE OF CALIFORNIA.

**Commisioner Glenn Mondo denied Defendant's right to be heard by a Judge.**

Glenn Mondo

On April 30, 2018, Plaintiffs moved the court for an Ex Parte hearing to advance Defendant's Demurrer.

Defendant appeared at the court before Commissioner Glenn Mondo and was denied her due process right to be before a judge.

Despite Defendant's objection Commissioner Glenn Mondo stated that he had bad news for Defendant. [see Court Transcript - Exhibit 1]

Commissioner Glenn Mondo believes a Government Code 259 trumps the Constitution.

Commissioner Glenn Mondo was bias and prejudice toward Defendant.

Commissioner Glenn Mondo failed to follow Court Rule 2.818 (b)(3)

**Rule 2.818. Disqualifications and limitations**

**(a) Code of Judicial Ethics**

A temporary judge must disqualify himself or herself as a temporary judge in proceedings as provided under the Code of Judicial Ethics.

*(Subd (a) lettered effective July 1, 2006; adopted as unlettered subd effective July 1, 2006.)*

**(b) Limitations on service**

In addition to being disqualified as provided in (a), an attorney may not serve as a court-appointed temporary judge:

(1) If the attorney, in any type of case, is appearing on the same day in the same courthouse as an attorney or as a party;

(2) If the attorney, in the same type of case, is presently a party to any action or proceeding in the court; or

(3) If, in a family law or unlawful detainer case, one party is self-represented and the other party is represented by an attorney or is an attorney.

Commissioner Glenn Mondo was quick to practice law from the bench in providing his alleged rights to deprive Defendant of her due process rights.

Defendant had told the court that she did not stipuate to the Commissioner, but Glenn Mondo proceeded anyway.

Defendant was never served the Ex Parte Motion pursuant to Court Rules.

Plaintiff's attorney SAM CHANDRA SBN 203942, California Business Entity Number: C2706519 failed to appear on April 30, 2018, making his alleged declaration hearsay.

SAM CHANDRA SBN 203942  had a special appearance attorney RATHA KEA SBN 258837 appear for his office on April 30, 2018.

This special appearance attorney failed to meet the statutory requirements on appearance pursuant to to California Civil Code 283.

On April 30, 2018 there was no showing of anyone with first hand personal knowledge to give credit to the hearsay Ex Parte.

SAM CHANDRA SBN 203942 is acting in the capacity of a "debt collector". [see Plaintiff's Complaint - Exhibit 2]

Defendant responded with a Demurrer. [see Defendant's Demurrer - Exhibit 3]

Defendant contends and can prove that the matter before the state court and this district court is a violation of the Fair Debt Collection Practice Act [hereinafter "FDCPA"], disguised as a state court action. On Plaintiff's complaint page 4, last paragraph states:

"Notice: This office often acts as a Debt Collector, any information provided will be used for this purpose."

Plaintiffs, BRECKENRIDGE PROPERTY FUND 2016, LLC, [hereinafter "BPF"] filed a false claim against Defendant's property on April 9, 2018 identifed as case number 30-2018-00984614-CL-UD-NJC claiming to be the owner of Defendant's property by way of a non-judicial foreclosure.

Plaintiffs filed the Summons and Complaint with the State Court without one shred of evidence to meet a preliminary fact.

The Alleged Plaintiffs, BPF have filed a false claim before the state court using the California State statutory laws to hide the FDCPA violations intentionally committed against Defendant.

BPF, who is **not** the **lender of record,** but a debt collector, in violation of the FDCPA, 15 U.S.C 1692 et seq., as the FDCPA imposes civil liability on "debt collectors[s]" for certain prohibited debt collection practices. The FDCPA provides for a debt collector who "fails to comply with any [FDCPA] provision… with respect to any person is liable to such person" for actual damage[s]," costs, "a reasonable attorney's fee as determined by the court," and statutory "additional damages". 1692k(a). In addition, violations of the FDCPA are deemed unfair or deceptive acts or practices under the Federal Trade Commission Act(FTC Act),41 et seq., which is enforced by the Federal Trade Commission [hereinafter "FTC"]

**FDCPA VIOLATIONS**

"The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote

consistent State action to protect consumers against debt collection abuses.'" Gonzales v. Arrow Fin. Servs., LLC 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). The Act's purpose is "to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive debt collection practices." Guerrero v. RJM Acquisitions, LLC, 499 F.3d 926, 938 (9th Cir. 2007) (citing S. Rep. 95–389, at 2, 4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1696, 1699). And the "FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous." Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1171 (9th Cir. 2006) (quoting Clomon v. Jackson, 988 F.2d 1314, 1318–19 (2d Cir. 1993)).

The Act regulates communication between debt collectors and debtors, 15 U.S.C. §§ 1692b, c, g, and creates a federal cause of action for debtors under 15 U.S.C. § 1692k. Debt collectors may be subject to civil liability for engaging in harassment or abuse, 15 U.S.C. § 1692d, making false or misleading representations of various sorts, 15 U.S.C. §§ 1692e, j, or engaging in unfair practices while attempting to collect debt, 15 U.S.C. § 1692f

To enforce the FDCPA, the United States Congress chose "**a private attorney general approach**." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (citing Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995)); see also Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991) (noting that it was "Congress's intent that the Act should be enforced by debtors acting as private attorneys general."). "Prevailing plaintiffs . . . are entitled to actual damages, statutory damages, and attorney's fees and costs." Gonzales, 660 F.3d at 1061 (citing 15 U.S.C. § 1692k(a))

The Ninth Circuit cited Ho v. ReconTrust, 840 F.3d 618 (9th Cir. 2016) for the proposition that § 1692a(6)'s definition of "debt collector" includes security interest enforcers, who are regulated only through § 1692f(6)

Here Plaintiffs have brought a state court issue to hide the FDCPA issues.

**In The Grable Decision**: The facts of Grable are straightforward. See Grable, 125 S.Ct. at 2366. In 1994, the IRS seized Grable's property to satisfy Grable's federal tax delinquency. The IRS gave Grable notice by certified mail before selling the property to Darue. Five years later, Grable brought a quiet title action in state court alleging that Darue's title was invalid because 26 U.S.C. §6335(a) required personal service. Darue removed the case to federal court on the ground that Grable's claim of title depended on the interpretation of the federal notice statute. The district court and Sixth Circuit upheld federal jurisdiction.

Put simply, Plaintiffs cannot disguise a federal claim by artful pleading. For example, the Ninth Circuit has held that a state court complaint that articulates a federal tax case in state law terms is another example of artful pleading. In Bright v. Bechtel Petroleum, Inc., 780 F.2d 766, 769 (9th Cir. 1986), an employee filed a state court action against the employer for failure to pay the full wages agreed upon. The employer removed the case to federal court on the ground that the employee had artfully pleaded what was actually a challenge to the employer's compliance with federal income tax withholding laws. The court upheld the removal and dismissed the complaint on the grounds that a federal question existed and that the employer was not liable to the employee for complying with its legal duty to withhold income taxes. [The district court also awarded the employer attorney fees, and double costs were awarded on appeal.]

Similarly, in Brennan v. Southwest Airlines, 134 F.3d 1405, 1409 (9th Cir. 1998), the court concluded that a state court breach of contract suit against the airlines was essentially a suit for the refund of excise taxes that the airlines had improperly collected. The court held that because the Internal Revenue Code provided the exclusive remedy for obtaining a refund of federal taxes, the state court action was removable. It held that the action was properly dismissed based on Plaintiffs' failure to exhaust administrative remedies and failure to sue the United States as a proper party.

## SUBJECT MATTER JURISDICTION – DIVERSITY

This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367, 18 U.S.C. § 1964(c), and 15 U.S.C. § 1640(e), 18 U.S.C. §1341, 18 U.S.C. §514

The Court has diversity subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1442:

This case is properly removed to this Court because, as more fully set forth below:

(a) the aggregate amount placed in controversy by the claims of Plaintiffs exceeds the sum or value of $75,000, exclusive of interest and costs.

Here Plaintiff"s Complaint states Defendant's value of the property is $510,000.00. [refer to Complaint, (Exhibit List 2.) Trustee's Deed Upon Sale - Exhibit 4]

## AMOUNT IN CONTROVERSY

1.    **Amount in Controversy**., "the matter in controversy [must] exceed the sum or value of $75,000, exclusive of interest and costs ..." 28 U.S.C. §1332(a)(l).

In actions to enforce or protect an interest in property, the value of the property interest determines the amount in controversy." Cal. Practice Guide, Fed. Civ. Pro, Before Trial. Ch. 2C-8, §§ 2:1765, 1:1780, 2:1835-2:1836. In addition, "[i]n actions seeking

declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." ***Hunt v. Wash. State Apple Adver. Comm'n***, 432 U.S. 333,347 (1877). Thus, even if"[t]he value of the requested injunction against Defendants would not be ''recovered by Plaintiffs ... the value of such an injunction is part of the amount that has been put in controversy by Plaintiffs' complaint." ***Tuong Hoang v. Supervalu Inc.,*** 541 Fed. App'x. 747,748 (9th Cir. 2013). In such a situation, [t]he amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action." ***Meisel v. Allstate Indent Co.***, 357 F.Supp.2d 1222, 1225 (E.D. Cal. 2005) (citations omitted). Moreover, "[i]n determining the amount in controversy, a court may consider compensatory and punitive damages as well as attorney fees, but may not consider interest and costs of suit." *Meisel* supra3 357 F.Supp.2d at 1225. It is proper for the removing Defendant to add all relief sought in the complaint for purposes of establishing the amount in controversy. See, e.g., ***Ray v. Wells Fargo Bank, NA.,*** 2011 WL 1790123 at *5 (C.D. Cal. May 9, 2011).

## The Artful Pleading Doctrine

"[I]n general, district courts have federal-question jurisdiction only if a federal question appears on the face of a Plaintiff's complaint. [Citations.] "The Artful Pleading Doctrine" creates an exception to this general rule." T & E Pastorino Nursery, 268 F.Supp.2d at 1247.

## NATURE OF ACTION

Defendant, was misled, deceived, deprived from her Real Property by Entities, Institution, and people claiming they had a right to initiate the foreclosure on Defendant's Property by false and forged documents clouding Defendant's title.

Plaintiffs filed an unverified complaint in violation of the laws and statutes. CCP 396(a)

(a) The plaintiff shall state facts in the complaint, verified by the plaintiff's oath, or the oath of the plaintiff's attorney, or in an affidavit of the plaintiff or of the plaintiff's attorney filed with the complaint, showing that the action has been commenced in the proper superior court and the proper court location for the trial of the action or proceeding, and showing that the action is subject to the provisions of Sections 1812.10 and 2984.4 of the Civil Code or subdivision (b) of Section 395 of the Code of Civil Procedure, or is an action for an unlawful detainer. When the affidavit is filed with the complaint, a copy thereof shall be served with the summons. Except as provided in this section, **if the complaint or affidavit is not filed pursuant to this subdivision, no further proceedings may occur in the action or proceeding, except to dismiss the action or proceeding without prejudice.**

The Wrongful Sale failed to comply with multiple Federal and State Laws by the creation of fabricated documents pertaining to fraudulent foreclosure proceedings deliberately committed by Third-Party Debt Collectors, posing as alleged beneficiaries who cunningly knew that Defendant's due process rights would be violated in the State Courts Summary Proceedings.

The following documents were presented to Defendant which clearly state that they are Debt Collectors:

1. Notice of Default on page 2 signature page, bottom states: Dated: January 28, 2013

    TITLE TRUST DEED SERVICE COMPANY

    **"We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing."**

    [see Notice of Default and Election To Sell Under Deed of Trust - Exhibit 5]

2. Notice of Trustee's Sale: **"Trustee Corps may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for the purpose."** [see Notice of Trustee's Sale - Exhibit 6]

Defendant contends that if it quacks like a duck and walks like a duck, then it is more than likely to be a DUCK/DEBT COLLECTOR.

The matter before this court is a violation of Defendant's due process right and a intended violation of the FDCPA.

## FDCPA VIOLATIONS

*Alozynski v. Rubin & Dcbski, P.A.*, 2010 WL 1849081 (M.D. Fla, May 7, 2010). The court denied a motion to dismiss because individuals who control and direct the practices of a collection firm can be personally liable even if they act under the auspices of a corporate entity. In addition, they may be liable as persons who "directly or indirectly" collect or attempt to collect a debt.

*Munoz v. Pipestone Fin., LLC, 397 F. Supp. 2d 1129 (D. Minn. 2005).* The purchaser of defaulted debt portfolios was a debt collector, notwithstanding that it itself did not communicate with the consumer in an attempt to collect debt and where instead the actual collection efforts were performed by another debt collector with whom it contracted.

*Addison v. Braud,* 105 F.3d 223 (5th Cir. 1997). Attorneys who regularly engaged in debt collection litigation were "debt collectors" for the purposes of the FDCPA.

Plaintiff's own attorneys are acting as "Debt Collectors" attempting to collect a debt. *Crosslcy v. Lieberman*, 868 F.2d 566 (3rd Cir. 1989). An attorney routinely collecting consumer debts is a debt collector under § 1692a(6).

*Newman v. CheckRite California, Inc.,* 912 F. Supp. 1354 (E.D. Cal. 1995). The FDCPA applies to lawyers engaged in litigation.

This raises a question as to what is before the court; a state issue or a federal issue?

Defendant seeks Due Process of Law in The United States District Court for the Central District of California, Southern Division – Orange County [Santa Ana] as Demanded by The Constitution of The United States of America Amendments IV, VII, XIV.

Justice and Discovery is requested in this Southern Division – Orange County [Santa Ana] Court.

Plaintiffs are part of an illegal sale of Defendant's property, a scheme concocted by the SAM CHANDRA-SBN 203942, ATTORNEY AT LAWfor BPF; part of an Illusion created by them to steal Defendant's home.

The Plaintiff's Complaint fails to state a cause of action, nor do Plaintiffs provide any evidence that it has Standing to bring the action.

### CONSTITUTIONAL VIOLATION OF DUE PROCESS OF RIGHTS

The COURTS OF CALIFORNIA, consistently violate the people's rights to due process guaranteed under the United States Constitution as proven by Commissioner Glenn Mondo.

"Law of the land," "due process of law," and "due course of law" are synonymous. People v. Skinner, Cal., 110 P.2d 41, 45; State v. Rossi, 71, R.I. 284, 2d 323, 326; Direct Plumbing Supply Company v. City of Dayton, 138 California St. 540, 38 N.E. 2d 70, 72, 137 A.L.R. 1058; Stoner v. Higginson, 316 Pa. 481, 175 A. 527, 531. 89. The term "due process of law," as sued in the federal constitution, has been repeatedly declared to be the exact equivalent of the phrase "law of the land" as sued in the Magna Carta. 16 Am. Jur. 2d 547; 90. Due course of law: This phrase is synonymous with "Due Process of Law" or "Law of the

Land" and means law in its regular course of administration through courts of justice. Kansas Pac. RY. CO. V Dunmeyer 19 KAN 542.

The people are being systematically denied their Due Process Rights

## DUE PROCESS UNDER THE UNITED STATES AND CALIFORNIA CONSTITUTIONS GIVES APPELLANTS THE FUNDAMENTAL RIGHT TO REASONABLE DISCOVERY OF EVIDENCE IN THE PROSECUTION OF THEIR DEFENSE.

**Defendant Has a Due Process Right to a Fair Hearing, Which Includes the Right to Produce Evidence and Cross-Examine Witnesses.**

Under the 14th Amendment to the United States Constitution and the California Constitution, no person may be deprived of life, liberty or property without "due process of law". The words "due process of law" refers to a principal that "fundamental fairness" must be applied to every party in a civil or criminal proceeding. Lassiter v. Department of Social Services (1981) 452 U.S. 18, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640, 648; see also, Witkin, Summary of California Law, Ninth Edition, Constitutional Law, §481.

The due process requirement of fundamental fairness has been expressly interpreted to include the right to have a "fair hearing". A fair hearing includes the right to produce evidence and cross-examine parties. This fundamental element of due process was eloquently summarized by the California Court of Appeals, Second District, in Buchman v. Buchman (1954) 123 Cal. App. 2d 546, 560:

*Consequently, such an error is reversible per se, and not subject to the application of the harmless error standard.* Arizona v. Fulminate 499 U.S. 279, 309-310, 111 S.Ct. 1246, 1264-1265, 113 L.Ed.2d 302; see Fewel v. Fewel (1943) 23 Cal. 2d 431, 433; Judith P. The Superior

Court (2002) 102 Cal. App. 4th 535, 554-558; see also Eisenberg et al, California Practice

Guide, Civil Appeals and Writs (The Rutter Group) Ch. 8, §8:308, p. 8-138.

   The District court has an obligation to protect the rights of the People and Defendant is

one of the People an American National, Ohioan and asks this court to protect her from the

wrong doings of **Plaintiffs**, and its attorneys.

   The Defendant seeks a temporary restraining order and both preliminary and permanent

injunctions prohibiting future such conduct, as well as other emergency relief, and that the

Plaintiffs disgorge their ill-gotten gains and pay civil penalties.

   The requirements of 28 U.S.C. §1331, 1441, and 1446 for removal have all been met

and this Court should take note and sustain this Notice of Removal.

   28 U.S.C. §1443(1) is designed to permit removal by disadvantaged defendants from

those in power who would oppress them for membership in or adherence to beliefs making

them part of a "discrete insular, politically powerless minority". Defendant's perspective of the

state judicial and general legal environment created by a state legislatures is, uniquely

empowered and by this statute protected as an avenue by which to assert and actually "defend"

Constitutional rights which are systematically trampled in state courts.

   Accordingly 28 U.S.C. §1443 constitutes an expressly authorized, in fact, specially

mandated, exemption to the "well-pleaded complaint rule" and United States District Judges

making such analyses and comparisons have plainly erred in confusing the two forms of

removal in their prior opinions, even in relationship to the present Defendants' removal, which

Defendants pray that this U.S. District Court will not repeat in the disposition of this present

case. Compare, for example, *McCullough v. Ligon*, 430 F. Supp. 2d 846, 850 (E.D. Ark.

2006); *Neal v. Wilson*, **112 F.3d 351, 355 (8th Cir. 1997).**

**Unlike the Defendant in *Neal v. Wilson*,** Defendant ©Susan Ganiere™ can and will at

trial "show" that Plaintiffs used false documents preventing her from raising her federal claims

in state court, [and] further [she] has shown the basis for an "equally firm prediction" that [she]

will be unable to protect her federal rights in state court." 112 F.3d at 855.

WHEREFORE AND ACCORDINGLY, Defendant ©Susan Ganiere™ hereby files this Notice of Removal pursuant to 28 U.S.C. §§1331, 1441, 1443 and 1446,

This Notice of Removal is timely in that the events of discovery, the "order or other paper from which it may first be ascertained that the case is one which is or has become removable" (28 U.S.C. §1446(b)).

## **CIVIL RIGHTS REMOVALS & CIVIL RIGHTS INJUNCTIONS**

Civil Rights Removal under 28 U.S.C. §§1443 & 1447(d) and Civil Rights Injunctions under 42 U.S.C. §§1983 & 1988 may be closely related as exceptions to the "Anti-Injunction Act" 28 U.S.C. §2283 as follows:

Defendant ©Susan Ganiere™ particularly urges this Court to consider a comprehensive re-evaluation of the Civil Rights Injunction doctrine in ***Dombrowski v. Pfister***, ***Younger v. Harris***, and ***Mitchum v. Foster***, alongside the Civil Rights Removal doctrine articulated in ***Greenwood v. Peacock*** and ***Rachel v. Georgia***, because, in essence, statutory removals are treated as stays [injunctions] of state court proceedings under the anti-injunction act, 28 U.S.C. §2283, and a comprehensive and color-blind State-to-Federal Civil Rights jurisprudence has yet to be developed, but such a constitutional jurisprudence is clearly necessary in light of the recent history of the United States.

For all the above-and-foregoing reasons, removal of this action from Superior Court in and for Orange County, California, to The United States District Court for the Central District of California, Southern Division – Orange County [Santa Ana], is proper pursuant to all relevant statutes and law.

# EXHIBIT 1

## COURT TRANSCRIPT

SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF ORANGE - NORTH JUSTICE CENTER

DEPARTMENT N18                    GLENN MONDO, COMMISSIONER


BRECKENRIDGE PROPERTY FUND 2016, )    **CERTIFIED**
                                 )
                                 )    **COPY**
            PLAINTIFF,           )
                                 )
      VS.                        )    NO. 30-2018-00984614-
                                 )    CL-UD-NJC576608
                                 )
SUSAN GANIERE,                   )
                                 )
            DEFENDANT.           )
_____)


REPORTER'S TRANSCRIPT OF AUDIOTAPE PROCEEDINGS

PROCEEDING HELD 4/30/18

A.M. SESSION


APPEARANCES:

FOR PLAINTIFF:

                    LAW OFFICE OF SAM CHANDRA, APC
                    BY:  RATHA KEA
                    SPECIALLY APPEARING
                    710 S. MYRTLE AVENUE
                    SUITE 600
                    MONROVIA, CALIFORNIA 91016


FOR DEFENDANT:      SUSAN GANIERE, IN PROPRIA PERSONA
                    P.O. BOX 4374
                    ORANGE, CALIFORNIA 92863-4374


                    LINDA SILVER RYAN, CSR NO. 9915

1
2
3                          NO WITNESSES
4
5
6
7
8
9
10                         NO EXHIBITS
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

```
1         PROCEEDINGS HELD 4/30/18 - A.M. SESSION
2              AUDIO TRANSCRIBED 5/11/18
3
4         THE COURT:  NEXT UP IS BRECKENRIDGE PROPERTY FUND
5    VS. GANIERE.
6         MR. KEA:  THANK YOU, YOUR HONOR.  RATHA KEA FOR
7    PLAINTIFF.
8         THE COURT:  OKAY.  WE HAVE SUSAN GANIERE PRESENT.
9             SO COME ON UP, PLEASE.
10             SO MS. GANIERE, I UNDERSTAND YOU WANT A
11   REAL JUDGE.  I'VE GOT BAD NEWS FOR YOU.  I'M YOUR REAL
12   JUDGE TODAY BECAUSE UNDER CODE OF CIVIL PROCEDURE
13   SECTION 259 EVERY COMMISSIONER IS AUTHORIZED TO HEAR AND
14   DETERMINE EX PARTE MOTIONS.  SO I WILL HEAR AND
15   DETERMINE YOUR EX PARTE MOTION.
16             I DO HAVE A -- PLEASE COME UP TO THE TABLE,
17   MA'AM, IF YOU WISH TO BE HEARD.
18        MS. GANIERE:  I'M SORRY -- INAUDIBLE -- AND I NEED
19   ACCOMMODATIONS --
20        THE COURT:  YES, MA'AM, I UNDERSTAND THAT YOU DO
21   NOT WANT TO STIPULATE TO MY HEARING THE CASE, AND I'M
22   TELLING YOU I DON'T NEED YOUR STIPULATION TO HEAR THE
23   CASE, THAT PURSUANT TO LAW, GOVERNMENT CODE SECTION 259,
24   I'M AUTHORIZED TO HEAR AND DETERMINE EX PARTE MOTIONS.
25             I AM BEFORE YOU HERE TODAY TO HEAR
26   PLAINTIFF'S EX PARTE MOTION.
27        MS. GANIERE:  I GAVE NOTICE TO THE COURT ON APRIL
28   16 -- INAUDIBLE -- STIPULATION --
```

2

1        THE COURT:  PARDON ME?

2        MS. GANIERE:  I GAVE NOTICE TO THE COURT ON

3    APRIL 16TH WITH MY -- INAUDIBLE --

4        THE COURT:  YES, AND I'M NOW ADVISING YOU IT'S

5    INEFFECTIVE BECAUSE I DON'T NEED A STIPULATION TO HEAR

6    AN EX PARTE.  NOW, IF YOU CHOOSE NOT TO STIPULATE TO ME

7    HEARING THE TRIAL, IF WE GET THERE, ABSOLUTELY YOU HAVE

8    THAT RIGHT.  WE'LL FIND SOME OTHER COURTROOM FOR YOU.

9    BUT I DO NOT NEED A STIPULATION TO HEAR AN EX PARTE

10   APPLICATION, WHICH IS WHAT I HAVE BEFORE ME HERE TODAY.

11   THAT'S PURSUANT TO GOVERNMENT CODE SECTION 259.

12        SO, MS. GANIERE, ANY OPPOSITION TO THE

13   PLAINTIFF'S EX PARTE MOTION?  I DON'T SEE ANYTHING IN

14   WRITING.

15        MS. GANIERE:  I HAVE A COUPLE OF ISSUES I'D LIKE

16   THE COURT TO ADDRESS FOR ME BEFORE WE BEGIN.

17        THE COURT:  NO.  I'M GOING TO ADDRESS ONLY THE

18   EX PARTE APPLICATION, MA'AM.  DO YOU HAVE ANY OPPOSITION

19   TO THE EX PARTE APPLICATION?

20        MS. GANIERE:  IS THIS MATTER BEING RECORDED ON THE

21   RECORD?

22        THE COURT:  IT IS.

23        MS. GANIERE:  MAY I USE THIS RECORDING TO TAKE IT

24   UP ON A WRIT OR FILE AN APPEAL IF I NEED TO?

25        THE COURT:  I DON'T GIVE LEGAL ADVICE TO YOU OR TO

26   THE PLAINTIFF.  YOU CAN DO WHATEVER THE LAW PROVIDES

27   WITH REGARD TO THE RECORDING.

28        NOW, THEN, DO YOU HAVE ANY OPPOSITION TO

3

1    THE EX PARTE?

2        MS. GANIERE:  YES.

3        THE COURT:  THEN PLEASE TELL ME WHAT YOUR

4    OPPOSITION IS.

5        MS. GANIERE:  FIRST OF ALL, GOOD MORNING.  I'M

6    HERE BY SPECIAL APPEARANCE.  I'M NOT WAIVING ANY OF MY

7    RIGHTS JUDICIALLY OR PROCEDURALLY --

8        THE COURT:  ACTUALLY, YOU HAVE WAIVED THAT BY

9    FILING A DEMURRER, MA'AM.

10        MS. GANIERE:  -- I AM HERE UNDER DURESS TO PREVENT

11    A DEFAULT FROM BEING ENTERED AGAINST ME.

12        THE COURT:  NO, MA'AM, THIS IS WRONG.  BY FILING A

13    DEMURRER, YOU HAVE WAIVED ANY JURISDICTIONAL ISSUES.

14    YOU MADE YOUR FIRST APPEARANCE IN THE CASE.  IT IS NOT A

15    SPECIAL APPEARANCE.  BUT GO AHEAD.

16        MS. GANIERE:  IS COUNSEL GOING TO SWEAR IN?

17        THE COURT:  NO, MA'AM, BECAUSE I'M HEARING

18    EX PARTE BASED UPON WRITTEN DECLARATIONS.  THERE WILL BE

19    NO TESTIMONY IN COURT HERE TODAY ON THE APPLICATION.

20            ANYTHING ELSE?

21        MS. GANIERE:  CODE OF CIVIL PROCEDURE 1005(B) ON A

22    TIMELINE, 16 DAYS PLUS FIVE DAYS IN THE CASE --

23        THE COURT:  YES, THAT'S FOR A NOTICED MOTION.

24    THIS IS AN EX PARTE MOTION.

25        MS. GANIERE:  -- INAUDIBLE -- (SPEAKING OVER ONE

26    ANOTHER)

27            -- TO GIVE TIME FOR OPPOSITION BY PLAINTIFF

28    AND MY RESPONSE TO THAT OPPOSITION.

4

1     THE COURT:  YEAH.  THIS IS AN EX PARTE.  YOU'RE

2  TALKING ABOUT RULES FOR A NOTICED MOTION.

3          I DO NOT KNOW WHO IS GIVING YOU THIS LEGAL

4  ADVICE, BUT THEY'RE GIVING YOU TERRIBLE LEGAL ADVICE TO

5  BE QUITE HONEST.

6          ANYTHING ELSE, MA'AM?

7     MS. GANIERE:  THERE WAS NO SPECIAL NOTICE GIVEN.

8     THE COURT:  THE COURT FILE CONTAINS PROPER

9  NOTICE --

10     MS. GANIERE:  I DID NOT RECEIVE THE OPPOSITION

11  UNTIL SATURDAY AFTERNOON.

12     THE COURT:  -- AND THE COURT WILL HEAR THE CASE

13  TODAY.

14          ANYTHING ELSE, MA'AM?

15     MS. GANIERE:  ON FRIDAY I WAS IN FEDERAL COURT IN

16  LOS ANGELES ALL DAY.  THERE WAS NO WAY I COULD HAVE

17  RECEIVED THE OPPOSITION.  I RECEIVED IT ON SATURDAY

18  AFTERNOON.  AND THAT IS NOT SUFFICIENT TIME TO REVIEW

19  THE OPPOSITION AND COME TO THIS COURT.

20     THE COURT:  SO WOULD YOU LIKE A COUPLE OF MINUTES

21  NOW TO REVIEW THEIR PAPERWORK BEFORE I MAKE ANY RULINGS?

22  IF SO I AM HAPPY TO DO IT.

23     MS. GANIERE:  I AM NOT AN ATTORNEY --

24     THE COURT:  YOU ARE NOT --

25     MS. GANIERE:  -- WITH A STAFF AT MY DISPOSAL --

26     THE COURT:  -- BUT I AM OBLIGATED TO TREAT YOU THE

27  SAME AS SOMEBODY WHO REPRESENTS --

28     MS. GANIERE:  -- AND I NEED TO REVIEW --

1        THE COURT:  MA'AM, STOP INTERRUPTING ME.

2            YOU ARE NOT AN ATTORNEY.  AND IT'S

3    DIFFICULT TO REPRESENT YOURSELF IN COURT.  MOST PEOPLE

4    DO A POOR JOB OF IT BECAUSE IT'S INCREDIBLY DIFFICULT.

5            TO GET TO LAW SCHOOL, YOU'VE GOT, WHAT,

6    FOUR YEARS OF COLLEGE.  AND THEN YOU'VE GOT THREE YEARS

7    OF LAW SCHOOL.  SEVEN YEARS OF UPPER DIVISION EDUCATION.

8    AFTER THAT YOU'RE STILL NOT AN ATTORNEY.  YOU'VE GOT TO

9    TAKE A BAR EXAM.

10           ABOUT HALF THE PEOPLE THAT TAKE THAT EXAM

11   FAIL IT.  IT'S AN EXTRAORDINARILY DIFFICULT TEST.  AND

12   FOR THOSE HALF OR SO WHO DO PASS IT, THEY'RE NOT VERY

13   GOOD ATTORNEYS FOR THE FIRST COUPLE OF YEARS WHILE THEY

14   FIGURE OUT HOW IT WORKS IN THE REAL WORLD.

15           HOWEVER, THE FACT THAT YOU'RE NOT AN

16   ATTORNEY DOES NOT MEAN YOU GET SPECIAL TREATMENT.  IT

17   DOES NOT MEAN YOU GET TO PLAY BY YOUR OWN RULES OF

18   PROCEDURE OR YOUR OWN RULES OF EVIDENCE.  I AM OBLIGATED

19   TO TREAT YOU THE SAME AS SOMEBODY REPRESENTED BY

20   COUNSEL.  NO BETTER; NO WORSE.

21           RIGHT NOW I'M TREATING YOU BETTER BECAUSE

22   HAD AN ATTORNEY RAISED THE FRIVOLOUS ISSUES YOU HAVE

23   RAISED SO FAR, I WOULD HAVE SET AN ORDER TO SHOW CAUSE

24   RE SANCTIONS AGAINST THAT ATTORNEY FOR MISCONDUCT IN

25   COURT.

26           NOW, THEN, MY COURT FILE CONTAINS A PROPER

27   NOTICE BEING SERVED.  I AM NOW ASKING IF THERE IS ANY

28   SUBSTANTIAL SUBSTANTIVE DEFENSES YOU HAVE TO THE

6

1  EX PARTE.

2          ANYTHING ELSE, MA'AM?

3      MS. GANIERE:  COUNSEL'S EX PARTE APPLICATION HAS

4  NO DECLARATION OR AFFIDAVIT OF A PERSON WITH FIRSTHAND

5  PERSONAL KNOWLEDGE OF SUBJECT MATTER STATING THAT

6  THEY'RE GOING TO BE IRREFERRABLY (SIC) HARMED OR DAMAGED

7  UNDER PENALTY OF -- INAUDIBLE -- AN ATTORNEY PROXY IS

8  NOT SUFFICIENT.

9      THE COURT:  THAT'S NOT A LEGAL STANDARD RULING ON

10 A DEMURRER, MA'AM.  ONCE AGAIN YOU'RE OFF BASE.  ONCE

11 AGAIN I'M ACTUALLY TREATING YOU BETTER THAN AN ATTORNEY

12 BECAUSE, ONCE AGAIN, A FRIVOLOUS ARGUMENT LIKE THAT

13 WOULD LIKELY RESULT IN AN ORDER TO SHOW CAUSE RE

14 SANCTIONS.

15          IN RULING UPON A DEMURRER, I'M REQUIRED TO

16 ASSUME THE ALLEGATIONS IN THE COMPLAINT ARE TRUE, AND

17 THEREFORE THAT DECLARATION IS REQUIRED TO ESTABLISH THE

18 FACTS.

19          ANYTHING ELSE?

20     MS. GANIERE:  YOUR HONOR, LIKE I SAID, I AM NOT AN

21 ATTORNEY.  I REQUIRE TIME TO REVIEW THE OPPOSITION --

22     THE COURT:  MA'AM, YOU ARE NOT AN ATTORNEY, BUT

23 YOU GET NO SPECIAL TREATMENT --

24     MS. GANIERE:  -- AND I HAVE NOT HAD TIME TO REVIEW

25 THE OPPOSITION.

26     THE COURT:  -- AND THEREFORE THE COURT WILL NOT BE

27 GRANTING ADDITIONAL TIME BECAUSE I'D BE HOLDING AN

28 ATTORNEY TO THE SAME STANDARD.  I'D BE SAYING, "COUNSEL,

7

1   ANYTHING ELSE?"  BECAUSE RIGHT NOW I'VE HEARD NOTHING IN

2   TERMS OF A SUBSTANTIVE OPPOSITION TO THE EX PARTE.

3           ANYTHING ELSE?

4       MS. GANIERE:  IS IT YOUR INTENTION TO BLOCK MY

5   ACCESS TO A COURT WITH A PRESIDING JUDGE TODAY?

6       THE COURT:  MA'AM, THAT IS SUCH A RIDICULOUS

7   QUESTION, I'M NOT EVEN GOING TO ANSWER IT.

8           NOT HAVING HEARD ANY VALID OPPOSITION, THE

9   COURT IS GOING TO GRANT THE MOTION TO ADVANCE.  THE

10  DEMURRER IS OVERRULED.

11          MS. GANIERE, YOU HAVE FIVE DAYS IN WHICH TO

12  ANSWER AND ANSWER ONLY.  IT IS VERY IMPORTANT TO FILE AN

13  ANSWER WITHIN FIVE DAYS FROM TODAY.  BECAUSE BOTH

14  PARTIES ARE PRESENT OR REPRESENTED, THE MINUTES ARE

15  GOING TO REFLECT THAT NOTICE IS WAIVED.  SHOULD YOU FAIL

16  TO FILE AN ANSWER IN THE NEXT FIVE DAYS, OR SHOULD YOU

17  FILE SOMETHING OTHER THAN AN ANSWER, SOME OTHER MOTION

18  OR PLEADING, THAT WOULD BE STRICKEN BY THE COURT AS

19  BEING IN VIOLATION OF THE ORDER WHICH I'VE JUST ISSUED.

20          IT MEANS A DEFAULT WOULD LIKELY BE ENTERED

21  AGAINST YOU, AND YOU'D BE UNLIKELY TO HAVE AN

22  OPPORTUNITY TO PUT ON YOUR DEFENSE AT TRIAL IF A DEFAULT

23  IS ENTERED.  SO VERY IMPORTANT TO FILE AN ANSWER WITHIN

24  THE NEXT FIVE DAYS.

25          I SET THIS TRIAL FOR MAY 14TH.

26          NOW, MR. KEA, YOU HAD AN ISSUE WITH THAT ON

27  THE OTHER CASE.  DO YOU PREFER THE 17TH?

28      MR. KEA:  I DID.  WELL, GIVEN NOTICE IS BEING

8

1    WAIVED, YOUR HONOR, MAYBE THE 10TH WOULD BE --

2         THE COURT:  MS. GANIERE, ANY REASON WHY EITHER THE

3    10TH OR THE 14TH WILL NOT WORK FOR A TRIAL DATE?

4         MS. GANIERE:  YES.  MY COURT REPORTER IS NOT

5    AVAILABLE UNTIL THE 17TH, AND THAT'S THE DAY I

6    SCHEDULED.

7         THE COURT:  YEAH, THEN YOU CAN FIND A DIFFERENT

8    COURT REPORTER.

9              THE COURT IS GOING TO GO WITH A TRIAL DATE

10   OF MAY 14, 9 A.M., THIS COURTROOM.

11        MR. KEA:  YOUR HONOR, IF WE CAN HAVE A THURSDAY,

12   EITHER THE 10TH OR THE 17TH.

13        THE COURT:  OKAY.  MAY 17TH, 9 A.M., THIS

14   COURTROOM.  PLAINTIFF IS NOT REQUIRED TO GIVE NOTICE.

15   AS I SAID, THE MINUTES WILL REFLECT NOTICE IS WAIVED.

16             MS. GANIERE, VERY IMPORTANT YOU HAVE AN

17   ANSWER ON FILE IN THE NEXT FIVE DAYS.  AND THEN ONCE YOU

18   SHOW UP HERE ON MAY 17, IF YOU DO NOT STIPULATE TO MY

19   HEARING THE TRIAL, WHICH I DO REQUIRE A STIPULATION,

20   WELL THEN WE'LL SEND YOU TO ANOTHER COURTROOM.  GOOD

21   LUCK.

22        MR. KEA:  THANK YOU, YOUR HONOR.

23        MS. GANIERE:  THE ORDERS THAT YOU JUST GAVE, CAN I

24   HAVE THOSE IN WRITING, PLEASE?

25        THE COURT:  YOU MAY NOT.  YOU CAN GET A MINUTE

26   ORDER IF YOU LIKE.  IT SHOULD BE AVAILABLE TOMORROW FROM

27   THE CLERK'S OFFICE.

28             NEXT UP WE'RE GOING TO MOVE OUR TRIAL

1     CALENDAR --

2                    (END OF AUDIO RECORDING.)

3     /

4     /

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

1

2

3        I, the undersigned, a Certified Shorthand Reporter

4   of the State of California, do hereby certify:

5        That the foregoing proceedings were transcribed

6   from an audio recording; that a verbatim record of the

7   proceedings was made by me using machine shorthand which

8   was thereafter transcribed under my direction; further,

9   that the foregoing is an accurate transcription thereof

10  to the best of my ability depending on the quality of

11  the audio.

12       I further certify that I am neither financially

13  interested in the action nor a relative or employee of

14  any attorney of any of the parties.

15       IN WITNESS WHEREOF, I have this date subscribed my

16  name.

17

18  Dated:   May 11, 2018.

19

20

21  LINDA SILVER RYAN
    CSR No. 9915

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  2

## PLAINTIFF'S COMPLAINT

**SUM-130**

# SUMMONS
## *(CITACION JUDICIAL)*
### UNLAWFUL DETAINER—EVICTION
### *(RETENCIÓN ILÍCITA DE UN INMUEBLE—DESALOJO)*

**NOTICE TO DEFENDANT:** Susan Ganiere
*(AVISO AL DEMANDADO):*

Does 1 to 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* BRECKENRIDGE PROPERTY FUND 2016, LLC

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| **ELECTRONICALLY FILED** |
| Superior Court of California, |
| County of Orange |
| **04/09/2018** at 09:18:45 AM |
| Clerk of the Superior Court |
| By Andrea Calderon, Deputy Clerk |

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday, or a court holiday then you have the next court day to file a written response.) A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*Tiene 5 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

1. The name and address of the court is: SUPERIOR COURT OF CALIFORNIA,
   *(El nombre y dirección de la corte es):* COUNTY OF ORANGE

   *CASE NUMBER* 30-2018-00984614-CL-UD-NJC

   1275 No. Berkeley Ave.
   Fullerton, CA  92838          NORTH JUSTICE CENTER, ORANGE COUNTY

2. The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
   *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
   Sam Chandra SBN 203942          Law Offices of Sam Chandra, APC
                                    710 S. Myrtle Ave., # 600
   (626) 256-4999                  Monrovia, CA 91016-2171

3. *(Must be answered in all cases)* An unlawful detainer assistant (Bus. & Prof. Code, §§ 6400–6415) [X] did not [ ] did for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, complete item 6 on the next page.)*

Date: 04/09/2018          DAVID H. YAMASAKI, Clerk of the Court     A. Calderon , Deputy
*(Fecha)*                                                           Andrea Calderon        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

4. **NOTICE TO THE PERSON SERVED:** You are served
   a. [ ]  as an individual defendant.
   b. [ ]  as the person sued under the fictitious name of *(specify):*
   c. [ ]  as an occupant
   d. [X] on behalf of *(specify):*
      under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
             [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
             [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
             [X] CCP 415.46 (occupant)   4-11-18    [ ] other *(specify):*
5. [X] by personal delivery on *(date):*

---

Form Adopted for Mandatory Use
Judicial Council of California
SUM-130 [Rev. July 1, 2009]

**SUMMONS—UNLAWFUL DETAINER—EVICTION**

Code of Civil Procedure, §§ 412.20, 415.456. 1167
www.courtinfo.ca.gov

Page 1 of 2

SUM-130

| PLAINTIFF *(Name):* Breckenridge Property Fund 2016, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name):* Susan Ganiere, et al | |

6. **Unlawful detainer assistant** *(complete if plaintiff has received any help or advice for pay from an unlawful detainer assistant):*

a. Assistant's name:

b. Telephone no.:

c. Street address, city, and zip:


d. County of registration:

e. Registration no.:

f. Registration expires on *(date):*

SAM CHANDRA (# 203942)
LAW OFFICES OF SAM CHANDRA, APC
710 S. MYRTLE AVE., # 600
MONROVIA, CA 91016
(626) 256-4999

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**04/09/2018** at 09:18:45 AM

Clerk of the Superior Court
By Andrea Calderon, Deputy Clerk

ATTORNEYS FOR PLAINTIFF

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| BRECKENRIDGE PROPERTY FUND 2016, LLC | Case No.   30-2018-00984614-CL-UD-NJC |
| Plaintiff, | COMPLAINT FOR UNLAWFUL DETAINER |
| vs. | Action based on Code of Civil Procedure Section 1161a |
| SUSAN GANIERE | LIMITED CIVIL |
| and Does 1 to 10, | DEMAND DOES NOT EXCEED $10,000.00 |
| Defendants. | |

Plaintiff alleges as follows:

1.  Plaintiff is a: Limited Liability Co

2.  Plaintiff alleges a cause of action against the following person(s) hereinafter "Defendants" for Unlawful Detainer:  Susan Ganiere

3.  The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes and on such information

and belief alleges, that each of the Defendants designated herein as DOE was legally responsible in some manner for the events and happenings herein referred to and legally caused damages approximately thereby to Plaintiff as herein alleged.

4. On 03/16/2018 Plaintiff became the owner of real property by purchasing said property at a foreclosure sale.

5. Title under this sale has been duly perfected.

6. Pursuant to the recitations contained within the Trustee's Deed Upon Sale, the foreclosure sale, and all required notices were accomplished in compliance with CC §2924 et. seq..

7. The Real Property as stated above bears the APN number of: 38311301

8. The Real Property as stated above is located at:  593 N Milford Street, Orange, CA 92867, County of ORANGE

9. No landlord/tenant relationship exists between the purchaser and the Defendants.

10. Since the date of sale, and continuing to present, Defendants have occupied said premises without the consent or authorization of the purchaser.

11. Defendants' title, if any, to said premises, that existed prior to the date of sale, was extinguished by said sale.

12. On  04/03/18    , Plaintiff caused to be served on the Defendants a written notice in compliance with the Code of Civil Procedure, Section 1161a et seq., requiring and demanding that Defendant(s) quit and deliver up possession of the premises within    3    days.

13. More than   3    days have elapsed since the service of said notice.  The notice has expired, but Defendants have failed and refused, and continues to fail and refuse, to quit and deliver up possession of the premises, Defendant(s) now being in possession thereof.

14. The reasonable rental rate of the premises is $ 3,250.00    per month.  The daily rate based upon a 30 day month is $ 108.33.

15. Plaintiff is being damaged by the detention of this property in the sum of not less than $ 108.33 per day for the use and occupancy of said premises, and will continue to sustain damages at said rate for so long as Defendants remain in possession of the premises.

16. Plaintiff has not received any rents or other compensation from the Defendant(s).

17. The Defendants hold-over and continue in possession of the premises.  Said hold-over and continued possession is willful, intentional, deliberate, and without permission or consent of Plaintiff.  Plaintiff is entitled to immediate possession of the premises.

18. The premises are located in the above-entitled judicial district.

19. Defendants have had use and enjoyment of the premises, at the detriment of Plaintiff from the date of the service of the notice through today and will continue to enjoy the same through the date of entry of judgment or the date Plaintiff is finally able to recover possession of the premises.

WHEREFORE, Plaintiff prays against Defendants, and each of them, as follows:

1.    For restitution and possession of the premises;

2.    For damages in the amount of $108.33 per day or as allowed by law from  04/07/18 to the date of entry of judgment, or recovery of possession of the premises;

3.    For Plaintiff's costs of suit;

4.    For such other and further relief as the Court may deem just and proper.

Executed  04/09/18

_____
Sam Chandra, Esq
Attorney for Plaintiff

EXHIBIT LIST:

The following exhibits are attached and incorporated into the complaint by reference:

1. Verification to Complaint
2. Deed
3. Notice and proof of service.

MC-0:

| SHORT TITLE: | CASE NUMBER: |
|---|---|

1

ATTACHMENT (Number): ____

(This Attachment may be used with any Judicial Council form.)

Page _1_ of _1_

(Add pages as required.)

2

3

## VERIFICATION of the Complaint:

4

I am:

[ ] the Plaintiff;

5

[ ] an Officer of the Plaintiff in this action, and am authorized to make this verification for and on its behalf.

6

[ ] a partner of the Plaintiff in this action, and am authorized to make this verification for and on its behalf.

7

[X] an agent of the Plaintiff in this action, and am authorized to make this verification for and on its behalf.

The matters stated in the forgoing document are true of my own knowledge except as to those matters stated on information and belief, and as to those matters I believe them to be true. I am the person most knowledgeable for the matters contained within the complaint and for that reason I make this verification.

8

9

10

I request that a facsimile whether by traditional fax or by "scan and e-fax or e-mail" be accepted as an original pursuant to CRC 2.305(d).

11

12

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct. Executed in Redondo Beach _____, California. Pursuant to Code of Civil Procedure, Sections 2015.5 and 396a.

13

14

Olivia Reyes                    4-9-18

(Name, printed or typed)        (Date)          (Signature)

15

Pursuant to Evidence Code, § 1521 and Calif. Rules of Court, Rule 2.305(d), a signature hereon, in any, produced by facsimile transmission is admissible as an original.

16

17

Declaration of Attorney re Verification: My client has indicated to me that they are unable to proceed to my

18

office to deliver a "wet ink signature", as such this document is either a faxed copy of the original or a

19

scanned and e-mailed copy of the original. I request the court to accept it as an original per CRC 2.305(d).

20

Sam Chandra   4/9/18

21

22

Notice: This office often acts as a Debt Collector, any information provided will be used for this purpose.

23

24

25

26

27

(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)

Form Approved for Optional Use
Judicial Council of California
MC-025 [New July 1, 2002]

**ATTACHMENT**
to Judicial Council Form

Cal. Rules of Court, rule 982

RECORDING REQUESTED BY:

**COPY** of Document Recorded

04/02/18     2018000115640

Has not been compared with original. Original will be returned when processing has been completed.

Orange    COUNTY REGISTRAR-RECORDER

WHEN RECORDED MAIL DEED
AND TAX STATEMENT TO:

BRECKENRIDGE PROPERTY FUND 2016, LLC
2015 MANHATTAN BEACH BLVD. SUITE 100
REDONDO BEACH, CA 90278

APN: 383-113-01          TS No: CA08000612-15-1          TO No: 120408946

593 NORTH MILFORD ROAD
ORANGE, CA 92867

**TRUSTEE'S DEED UPON SALE**

The undersigned Grantor, under penalty of perjury, declares:

1) The Grantee herein was not the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was:     $728,394.44
3) The amount paid by the Grantee at the trustee sale was:     $510,000.00
4) The documentary transfer tax is:     $ 561.00
5) Said property is in the city of: ORANGE
6) A.P.N. 383-113-01

and MTC Financial Inc. dba Trustee Corps, herein called "Trustee", as Trustee (or as Successor Trustee) of the Deed of Trust hereinafter described, hereby grants and conveys, but without covenant or warranty, express or implied, to BRECKENRIDGE PROPERTY FUND 2016, LLC, herein called "Grantee", the real property in the County of Orange, State of California, described as follows:

LOT 10 OF TRACT 2457, IN THE CITY OF ORANGE, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 80, PAGES 3 AND 4 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

This deed is made pursuant to the authority and powers given to Trustee (or to Successor Trustee) by law and by that certain Deed of Trust dated March 17, 2006, made to SUSAN GANIERE, AN UNMARRIED WOMAN and recorded on March 24, 2006, as Instrument No. 2006000196176 of Official Records in the office of the Recorder of Orange County, CA, Trustee (or Successor Trustee) having complied with all applicable statutory provisions and having performed all of his duties under the said Deed of Trust.

APN: 383-113-01                    TS No: CA08000612-15-1                    TO No: 120408946

All requirements of law and of said Deed of Trust relating to this sale and to notice thereof having been complied with. Pursuant to the Notice of Trustee's Sale, the above described property was sold by Trustee (or Successor Trustee) at public auction on March 16, 2018 at the place specified in said Notice, to Grantee who was the highest bidder therefore, for $510,000.00 cash, in lawful money of the United States, which has been paid.

Dated: 3-23-2018              MTC Financial Inc. dba Trustee Corps

                              By: Bobbie LaFlower, Authorized Signatory

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of CALIFORNIA
County of ORANGE

                              Bernardo Sotelo-Hernandez

On __3-23-18__ before me, _____, a Notary Public, personally appeared BOBBIE LAFLOWER, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

BERNARDO SOTELO-HERNANDEZ
Notary Public - California
Orange County
Commission # 2192599
My Comm. Expires Apr 20, 2021

Notice to Any Renters Living At

593 N Milford Street
Orange, California 92867

The attached notice means that your home was recently sold in foreclosure and the new owner plans to evict you.

You should talk to a lawyer NOW to see what your rights are. You may receive court papers in a few days. If your name is on the papers it may hurt your credit if you do not respond and simply move out.

Also, if you do not respond within five days of receiving the papers, even if you are not named in the papers, you will likely lose any rights you may have. In some cases, you can respond without hurting your credit. You should ask a lawyer about it.

You may have the right to stay in your home for 90 days or longer, regardless of any deadlines stated on any attached papers. In some cases and in some cities with a "just cause for eviction law," you may not have to move at all. But you must take the proper legal steps in order to protect your rights.

How to Get Legal Help

If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Internet Web site (www.lawhelpca.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

# NOTICE TO QUIT

TO: <u>Susan Ganiere</u>,
and all other persons and/or entities in possession of the real property commonly known as: <u>593 N Milford Street, Orange, California 92867</u> (the "Premises").

1.  NOTICE IS HEREBY GIVEN that Breckenridge Property Fund 2016, LLC purchased the Premises at a foreclosure sale held pursuant to the power of sale contained in a deed of trust in accordance with California Civil Code § 2924 and that title to the Premises has been duly perfected.

2.  Despite its best efforts, <u>Breckenridge Property Fund 2016, LLC</u> is unaware of the status of the occupant(s), and therefore provides notice of termination under either a 3, 30 or 90 day notice.

3.  You will fall within ONE of the three categories below either as: (a) a prior owner, (b) a renter of a room of the Premises or a non-rent-paying occupant, or (c) a renter independent from the prior owner.

    a.  If you are the former owner(s) of the Premises, the trustor(s) on the deed of trust for the Premises, the successor in interest to said trustor(s) or a person claiming possession under such person(s) [Cal. Code Civ. Proc. § 1161a(b)(3)], then **WITHIN 3 DAYS AFTER SERVICE OF THIS NOTICE;** or

    b.  If you are a rent-paying tenant or subtenant in possession of any structure or any part of the Premises (e.g. a room or unit of the Premises), a non-rent-paying occupant in possession of the Premises or an occupant in possession of the Premises without an agreement that specifies a definite rental period (e.g. a caretaker) [Cal. Code Civ. Proc. § 1161a(c) or Civ. Code § 789,], then **WITHIN 30 DAYS AFTER SERVICE OF THIS NOTICE;** or

    c.  If you are a rent-paying tenant or subtenant in possession of the Premises, under a month-to-month lease or periodic tenancy at the time the Premises was sold in foreclosure (i.e. you are not a tenant or subtenant as described in paragraph 2 above) [Cal. Code Civ. Proc. § 1161b], then **WITHIN 90 DAYS AFTER SERVICE OF THIS NOTICE,**

4.  **YOU ARE REQUIRED** to quit and surrender possession of the Premises or the portion in which you reside to <u>Breckenridge Property Fund 2016, LLC</u> or to the undersigned who is authorized to receive the same. Unless you vacate and deliver possession of the Premises within the time described above, an unlawful detainer (eviction) lawsuit will be filed against you to recover possession of the Premises, all damages (including monies pursuant to Code of Civil Procedure § 1174(b) and any other damages allowed by law), costs and attorneys' fees. This notice was served concurrently with the coversheet as described by Cal. Code Civ. Proc. § 1161c.

Note, if two or more of the above categories describe you, the category with the longest notice period will prevail.

Note, if you claim that you (i) occupy the Premises under a written lease, (ii) have a tenancy that requires the monthly payment of rent, or (iii) have a tenancy that is protected under any local or State laws, such as rent control or just cause eviction laws, please provide a copy of the written lease and all rent receipts to Olivia Reyes at 2015 Manhattan Beach Blvd Suite 100, Redondo Beach, CA 90278, (310) 640-3070 x 110.

Note, state law permits former occupants to reclaim abandoned personal property left at the former address of the occupant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact the owner as listed above, after being notified that property belonging to you was left behind after you moved out.

<u>Active Military</u>: If you are active in the United States Military or otherwise entitled to the benefits of the Service members Civil Relief Act (50 U.S.C. App. § 501 et seq.), please contact the undersigned immediately. Note, proof of status may be required and reviewed under Federal Law.

If you are in possession of the Premises and your name does not appear on this notice, please contact the undersigned immediately at (310) 640-3070 x 110.

4/3/2018
Date

Olivia Reyes, Authorized Agent of Owner

## DECLARATION OF SERVICE OF NOTICE
## BY REGISTERED PROCESS SERVER

I, the undersigned, declare that at the time of service of the papers herein described, I was at least eighteen (18) years of age, and a REGISTERED PROCESS SERVER AS INDICATED BELOW. I served the following:

**Document served:** Foreclosure Notice to Quit & Coversheet

**Persons served:** Susan Ganiere; all occupants in care of the named tenant

**Location of service:**

593 N Milford Street
Orange, CA 92867

**Method of service:**

☐ **PERSONAL DELIVERY** of a copy of the Notice to:

☐ By **Leaving a Copy** of the notice for residents with _____, a person of suitable age or discretion, at the residence of the residents; **AND BY MAILING** by first-class mail on said date a copy to each of the residents by depositing said copies into the United States Mail in a sealed, postage-paid envelope, addressed to the residents at their place of residence.

☑ **BY POSTING & MAILING** After unsuccessfully attempting to locate residents and there being no person of suitable age or discretion to be found, **I POSTED** a copy for each of the residents in a conspicuous location on the premises, **AND I MAILED** by first-class mail on the same day as posted, a copy to each of the residents by placing in the United States Mail in a sealed, postage-paid envelope, addressed to the residents where the property is situated. I am unaware of any alternate address or usual place of business other than the address as indicated above.

Date of Service: 4-3-18
(date)

I declare under penalty of perjury under he laws of the state of California that the foregoing is true and correct and if sworn as a witness could competently testify thereto.

Dated: 4-3-18

_____
(Signature)

JAY YOUNG

_____
(Name, printed or typed)

Registration County: Orange County

Registration number: 2828
Company Name:    CHOICE ATTORNEY SERVICE
Company Addr:    9852 KATELLA # 171
Addr line 2:    ANAHEIM, CA 92804
Phone number:    714-774-3176

CP10.5

**NOTICE:** EVERYONE WHO LIVES IN THIS RENTAL UNIT MAY BE EVICTED BY COURT ORDER. READ THIS FORM IF YOU LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.

1. If you live here and you do not complete and submit this form, you may be evicted without further hearing by the court along with the persons named in the Summons and Complaint.
2. You must file this form within 10 days of the date of service listed in the box on the right hand side of this form.
   - **Exception:** If you are a tenant being evicted after your landlord lost the property to foreclosure, the 10-day deadline does not apply to you and you may file this form at any time before judgment is entered.
3. If you file this form, your claim will be determined in the eviction action against the persons named in the complaint.
4. If you do not file this form, you may be evicted without further hearing.
5. If you are a tenant being evicted due to foreclosure, you have additional rights and should seek legal advice immediately.

| | |
|---|---|
| CLAIMANT OR CLAIMANT'S ATTORNEY (Name and Address):    TELEPHONE NO.:<br><br><br><br><br>ATTORNEY FOR (Name) | FOR COURT USE ONLY |
| NAME OF COURT:<br>STREET ADDRESS:<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:<br>BRANCH NAME: | |
| Plaintiff:<br>Defendant: | |
| **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | CASE NUMBER: |
| Complete this form only if ALL of these statements are true:<br>1. You are NOT named in the accompanying Summons and Complaint.<br>2. You occupied the subject premises on or before the date the unlawful detainer (eviction) complaint was filed. (The date is in the accompanying Summons and Complaint.)<br>3. You still occupy the subject premises. | (To be completed by the process server)<br>DATE OF SERVICE: 4·9·18<br>(Date that form is served or delivered, posted, and mailed by the officer or process server) |

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1. My name is (specify):

2. I reside at (street address, unit no., city and ZIP code):


3. The address of "the premises" subject to this claim is (address):


4. On (insert date): 4·9·18 , the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises. (This date is in the accompanying Summons and Complaint.)

5. I occupied the premises on the date the complaint was filed (the date in item 4). I have continued to occupy the premises ever since.

6. I was at least 18 years of age on the date the complaint was filed (the date in item 4).

7. I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed (the date in item 4).

8. I was not named in the Summons and Complaint.

9. I understand that if I make this claim of possession, I will be added as a defendant to the unlawful detainer (eviction) action.

10. (Filing fee) I understand that I must go to the court and pay a filing fee of $ or file with the court an "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file the form for waiver of court fees, I will not be entitled to make a claim of right to possession.

(Continued on reverse)

| | | |
|---|---|---|
| CP10.5 [Rev. June 15, 2015] | **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | Code of Civil Procedure, §§ 415.46, 715.010, 715.020, 1174.25 |

CP10.5

| Plaintiff: | CASE NUMBER: |
|---|---|
| Defendant: | |

11. If my landlord lost this property to foreclosure, I understand that I can file this form at any time before judgment is entered, and that I have additional rights and should seek legal advice.

12. I understand that I will have *five days* (excluding court holidays) to file a response to the Summons and Complaint after I file this *Prejudgment Claim of Right to Possession* form.

> **NOTICE: If you fail to file this claim, you may be evicted without further hearing.**

13. **Rental agreement.** I have *(check all that apply to you)*:

    a. ☐ an oral or written rental agreement with the landlord.

    b. ☐ an oral or written rental agreement with a person other than the landlord.

    c. ☐ an oral or written rental agreement with the former owner who lost the property to foreclosure.

    d. ☐ other *(explain)*:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

> **WARNING: Perjury is a felony punishable by imprisonment in the state prison.**

Date:

▶

_____                                         _____
(TYPE OR PRINT NAME)                                                             (SIGNATURE OF CLAIMANT)

> **NOTICE:** If you file this claim to possession, the unlawful detainer action against you will be determined at trial. At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

---

### — NOTICE TO OCCUPANTS —

**YOU MUST ACT AT ONCE if all the following are true:**

1. **You are NOT named in the accompanying** *Summons and Complaint.*
2. **You occupied the premises on or before the date the unlawful detainer (eviction) complaint was filed.**
3. **You still occupy the premises.**

You can complete and SUBMIT THIS CLAIM FORM WITHIN 10 DAYS from the date of service (on the form) at the court where the unlawful detainer (eviction) complaint was filed. If you are a tenant and your landlord lost the property you occupy through foreclosure, this 10-day deadline does not apply to you. You may file this form at any time before judgment is entered. You should seek legal advice immediately.

If you do not complete and submit this form (and pay a filing fee or file a fee waiver form if you cannot pay the fee), YOU WILL BE EVICTED.

After this form is properly filed, you will be added as a defendant in the unlawful detainer (eviction) action and your right to occupy the premises will be decided by the court. *If you do not file this claim, you may be evicted without a hearing.*

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

## DEFENDANT'S DEMURRER

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
NORTH JUSTICE CENTER

MAY 0 4 2018

DAVID H. YAMASAKI, Clerk of the Court

BY: J. PRADO, DEPUTY

1   ©Susan Ganiere™
    Post Office Box 4374
2   Orange, CA 92863
    Defendant
3

4

5                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

6                        **FOR THE COUNTY OF ORANGE**

7

8   **BRECKENRIDGE PROPERTY FUND**      )   Case No.: **30-2018-00984614-CL-UD-NJC**
    **2016, LLC,**                      )
9                                        )   DEFENDANT'S VERIFIED ANSWER
                    Plaintiffs,          )
10                                       )   JURY TRIAL DEMANDED
                                         )
11                     vs.               )   NON-STIPULATION TO COMMISSIONER
                                         )
12  **©SUSAN GANIERE™ and DOES 1-10,**  )
                                         )
13                  Defendant(s)         )
                                         )
14                                       )

15

16

17                        **DEFENDANT'S**

                        **VERIFIED ANSWER**
18
         COMES NOW Defendant, ©Susan Ganiere™, one of People of California in this court
19
    of record as Real Party in Interest holding, unalienable secured rights, title and interest to the
20
    subject Property and raising issues therein that must be heard under rights of due process, equal
21
    protection under the law, retention of rights and remedies in law.
22
         ©Susan Ganiere™ makes this appearance without waiving any of her rights judicially or
23
    procedurally.
24
         ©Susan Ganiere™ files this Verified Answer **under duress** to **prevent a default** from
25
    being entered against her and challenges Jurisdiction and Subject Matter Jurisdiction under the
26
    Supreme Court decision of U.S. Steel vs. Citizens for a better environment.
27
         Defendant ©Susan Ganiere™, one of the People of California in this court of record,
28
    demands a Jury Trial.

                        DEFENDANT'S VERIFIED ANSWER – 1

Defendant ©SUSAN GANIERE™ states she:

1. Is without information to form a determination as to paragraph 1 of the complaint.

2. Deny the allegation in paragraph 2 of the complaint.

3. Is without information to form a determination as to paragraph 3 of the complaint.

4. Deny the allegation in paragraph 4 of the complaint.

5. Deny the allegation in paragraph 5 of the complaint. All the elements of §2924 in the non-judicial foreclosure have not been met. *(See Preciado, 224 Cal. App. 4th Supp. at 9)*

6. Deny the allegations in paragraph 6 of the complaint. Defendant objects to these statements as being hearsay and that all required notices have not been met.

7. Admits the allegation in paragraph 7 of the complaint.

8. Deny the allegation in paragraph 8 of the complaint.

9. Admits the allegation in paragraph 9 of the complaint.

10. Deny the allegation in paragraph 10 of the complaint.

11. Deny the allegation in paragraph 11 of the complaint.

12. Deny the allegation in paragraph 12 of the complaint.

13. Deny the allegation in paragraph 13 of the complaint.

14. Deny the allegation in paragraph 14 of the complaint.

15. Deny the allegation in paragraph 15 of the complaint.

16. Deny the allegation in paragraph 16 of the complaint.

17. Deny the allegation in paragraph 17 of the complaint.

18. Is without information to form a determination as to paragraph 18 of the complaint.

19. Deny the allegation in paragraph 19 of the complaint

In the instant action both Code of Civil Procedure §1161a(b)(3), the statutory grounds for
unlawful detainer after a foreclosure, and Civil Code §2924 et seq are specific statutes, the
former controlling the sale of property after a foreclosure, and the latter statute(s) stating the
manner in which a non-judicial foreclosure must be followed to be valid. Both statutes must be
read together, in harmony with each, or inconsistent and invalid results will occur, and due
process is violated.

### STATEMENT OF FACTS

Plaintiff's counsel, SAM CHANDRA, cites in the complaint page 2 paragraph 4, 5 and 6
that the Plaintiffs became the owner of the premise by purchasing it at a trustee's sale duly
recorded the Trustee's Deed Upon Sale in compliance with California Civil Code §2924.

Plaintiffs statements imply that Defendant's property 'was sold' pursuant to the
foreclosure sale and has been 'duly perfected' in Plaintiff's name. This statement makes a
"conclusive presumption".

Plaintiffs are wrong. Civil Code 2924 DOES NOT provide a conclusive presumption of
unassailable title. The Court in Melendrez v. D & I Investment, Inc. (2005) 127 Cal.App.4th
1238 [26 Cal.Rptr.3d 413J specifically held at Foot Note 26:

"FN 26. Section 2924's conclusive presumption language for BFP's [bona fide
purchaser] applies only to challenges to statutory compliance with respect to default and sales
notices. In reaching this conclusion, we recognize that there is dictum that suggests that the
conclusive presumption under section 2924 applies across the board to any claimed
irregularities in the trustee's sale. In Moeller, the court held that the presumption under section
2924 provides that the trustee's "sale has been conducted regularly and properly", and that, as
against a BFP, the presumption operates to prevent the trustor from "attacking the validity of the
sale." (Moeller, supra, 25 Cal.App.4th 822, 831.) Cases following Moeller have similarly
described the conclusive presumption--applicable under section 2924 where the buyer is a BFP
who has received a trustee's deed--as precluding any attack on the trustee's sale. (See
Residential Capital v. Cal-Western Reconveyance Corp. (2003) 108 Cal.App.4th 807, 817
(Residential Capital) [once trustee's deed is delivered, "there was a conclusive presumption of

validity under section 2924"J; 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85

Cal.App.4th 1279, 1286 [same]; Angell v. Superior Court (1999) 73 Cal.App.4th 691,699-700

[same].) To the extent that Buyer may construe these cases as describing section 2924's

presumption as precluding any attack on the foreclosure sale as to a BFP--irrespective of

whether the challenge relates to the trustee's compliance with procedural requirements

concerning the default and sale notices--**we decline to follow such Interpretation.** (See 4

Miller & Starr, Cal. Real Estate, supra, Deeds of Trust § 10:211, p. 680 **[section 2924**

**"presumption only applies to the propriety of the required notices, <u>but it does not apply to</u>**

**<u>other requirements of the foreclosure process</u>".]**

In Crummer v. Whitehead (1964), 230 Cal, App. 2d 264, 268 (1964), the court held that

in an unlawful detainer action "brought pursuant to Code of Civil Procedure §1161 a(b )(3), **the**

**Defendant (trustor or homeowner) was entitled to dispute the validity of the trustee's sale**

**and to place respondent's title in issue,"** citing Kartheiser v. Superior Court, 174 Cal.App.2d

617, 620, The Crummer court further held that **"the burden of proof rested upon respondent**

**to show that the trust property had been "duly" sold to him and that his title was "duly**

**perfected."**

The use of the statutory term "duly" requires that all of those elements necessary to a

valid sale must exist. Title is "duly perfected" when all steps have been taken to make it perfect,

that is, to convey to the purchaser that which he has purchased, <u>valid and good beyond all</u>

<u>reasonable doubt, but is not limited to good record title, as between the parties to the</u>

<u>transaction</u>. [Cited from Kessler v. Bridge (1958) 161 Cal App 2d Supp 837, 838, an unlawful

detainer action]. As held in Ung v. Koehler (2005) 135 Cal.App.4th 186 [37 Cal.Rptr.3d 311J:

[Bank of New York Mellon v Vidal Preciado (Match 19,2014) 224 Cal.App. 4th Supp 1]

## GENERAL STATEMENTS AND OBJECTIONS
## TO BE INCORPORATED INTO EACH AND EVERY
## AFFIRMATIVE DEFENSE SET FORTH BELOW

Plaintiffs have brought a false claim before this court and their unlawful detainer has no merit as a matter of law. Defendant *is* prepared to appeal any adverse decision contrary to the hearsay rule and the disputable "evidence" of Plaintiff's fraudulent claim of ownership.

Plaintiffs' counsel should be aware and Defendant assumes this court is very aware; A qualified exception to the rule that title can be tried in an unlawful detainer proceeding is contained in CCP *§ 1161a.* By extending the summary eviction remedy beyond the conventional landlord-tenant relationship, AS IN THIS CASE, to include purchasers of the occupied property, the statue provides for a narrow and sharply focused examination of **title**.

A purchaser of the property as described in the statute, who starts an unlawful detainer proceeding to evict an occupant-in-possession, must show that he or she acquired the property at a regularly conducted sale and thereafter "duly perfected" the title (CCP § 1161 a;*(Vella v. Hudgins* (1977) 20 C3d 251, 255, 142 CR 414, 572 P2d 28).

To this limited extent, as provided by the statute, title may be litigated in the unlawful detainer proceeding *(Cheney v. Trauzettel* (1937) 9 C2d 158, 159,69 P2d 832). (Emphasis added)

Proceeding to "act" as if one is a lawful owner of any property does not make said claimant the lawful owner. As the Honorable court said in *Herrera,* et al.~ disputable facts must be proven in order to move title forward. Plaintiff's assertion that all requirements of Civil Code §2924 have been complied with is hearsay and NOT prima facie evidence of anything. Again, the *Herrera v. Deutsche Bank* decision is easily understood by those with eyes to see and ears to hear.

Plaintiffs through their counsel are misleading this court with malicious intent. Defendant has declared since the onset of this case, and is herein adamantly declares procedural requirements and lawful chain of title, are completely defective. If given justice in this case, Defendant can prove these allegations.

An attorney must counsel or maintain only those actions, proceedings, or defenses that appear to the attorney as legal or just. (Bus. & Prof. Code 6068(c)). An attorney is under a

duty not to encourage either the commencement or the continuance of an action or proceeding from corrupt motives of passion or interest. (Bus. & Prof. Code 6068(g); See Sorensen v. State Bar (1991 52 C.3d 1036, 1045; Rule of Professional Conduct 5-130). An attorney who presents a pleading, motion or similar paper to the court makes an implied "certification" as to its legal and factual merit; and is subject to sanctions for violation of this certification". (Code of Civ. Pro. 128.7; Murphy v. Yale Materials Handling Corp. (1997) cal. App App. 4th 619, 623).

In presenting these affirmative defenses, Defendant ©SUSAN GANIERE™ does not admit to any of the allegation contained in any of the documents referred to in any of the Affirmative Defenses.

Defendant in fact challenges and objects to the validity of each document as being hearsay, lacking foundation, lacking authentication, lacking firsthand personal knowledge of the matter stated therein, and pursuant to the grounds and case law of Herrera v. Deutsche Bank National Trust Co. (2011) 196 Cal.App.4th 1366, *Preciado, 224 Cal. App. 4th Supp. at 9* and on the further grounds that these documents are fraudulent, false, and forged, illegal, null and void. These documents include without limitation, the,

    a.  Deed of Trust ["DOT"],

    b.  Assignment of Deed of Trust ["ADOT"],

    c.  Substitution of Trustee ["SOT"],

    d.  Notice of Default ["NOD"],

    e.  Notice of Trustee Sale ["NOTS"],

    f.  Trustee's Deed Upon Sale ["TDUS"],

California judicial decisions are decisive and consistent that the recording of an assignment is a condition precedent for a deed of trust to serve as the valid instrument for foreclosure and subsequent eviction under an unlawful detainer. "A *recorded* assignment of note and deed of trust vests in the assignee all of the rights, interests of the beneficiary including authority to

exercise any power of sale given the beneficiary." *Strike v. Trans-West Discount Corp*(1979) 92 Cal.App.3d 735, 744. (Emphasis added.)

"[A] deed of trust is a mere incident of the debt it secures and that an assignment of the debt carries with it the security."' *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553.

As per *Strike,* such assignment must be recorded or is otherwise a legal nullity. "In any event, Kelley's purported assignment of the mortgage without an assignment of the debt which is secured was a legal nullity. *Kelly v. Upshaw* (1952) 39 Cal.2d 179, 192.

In the instant case, Plaintiffs instituted an unlawful detainer from a wrongful foreclosure stemming from the discrepancy in a forged assignment and its recording. Because of these discrepancies in recording assignment, Plaintiffs have the burden of proving that such assignment was valid to have invested them with the power of sale and/or purchase.

Yvanova holds that a **borrower has legal authority — standing — "to claim a non-judicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale."** (Yvanova, supra, 62 Cal.4th at pp. 942-943.)

"The burden of proving an assignment falls upon the party asserting rights there under."*Cockerell v. Title Insurance &Trust Co.* (1954) 42 Cal.2d 284, 292. "In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue (*Quan Wye* v. *Chin Lin Hee,* 123 Cal. 185 [55 P. 783]), but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary oblige." *Ibid.* "[A]

purchaser who has acquired the title at such trustee's sale must prove that the property was sold in accordance with **section 2924** of the Civil Code under a power of sale and that title under the sale has been **duly perfected**."*Bliss v. Security-First Nat. Bank of Orange* (1947) 81 Cal.App.2d 50, 58. (Emphasis added)

Accordingly, unless the assignment is a valid recorded document there is no "clear and positive" evidence of the fact of assignment when that fact is at issue, as in the instant case. Nor is there sufficient proof that the sale was **"duly perfected"**. As there is no genuine triable issue of material fact as to the discrepancies in assignments being duly recorded here, and thus, the foreclosure on Defendant's Property was inherently invalid.

In re: Sciarratta vs U.S. Bank National Association 247 Cal.App.4th 552 (2016). A wrongful foreclosure is a common law tort claim. It is an equitable action to set aside a foreclosure sale, or an action for damages resulting from the sale, on the basis that the foreclosure was improper. (See Miles, supra, 236 Cal.App.4th at pp. 408-409.) The elements of a wrongful foreclosure cause of action are: "'(1) [T]he trustee or mortgagee caused an illegal, fraudulent,[247 CalApp.4th 562], or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale [usually but not always the trustor or mortgagor] was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.1" (Id. at p. 408.) "[M]ere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely unauthorized on the facts of the case." (Id. at p. 409.) "[A]ll proximately caused damages maybe recovered." (Id. at p. 410.)

All of which documents are recorded against the subject property in the Official Records in the Orange County Clerk-Recorder Department in the State of California. These documents are referred to allege facts to support the claims of fraud, forgeries, violations of statutes, violation of rules of law, and illegality, but are objected to under California Evidence Code 1401(a)(b) as to being evidence of hearsay and nothing else.

The foregoing General Statement and Objections are thereby incorporated into each Affirmative Defense set forth below, as if set forth and pleaded at length in each Affirmative Defense.

## First Affirmative Defense

### (The Plaintiffs lack Standing and the Capacity to sue)

1.   Defendant alleges Plaintiffs Lack Standing and the Capacity to sue.

2.   The Complaint for Unlawful Detainer on file herein and the whole thereof fails, as the Plaintiffs lack standing to sue.

3.   Plaintiffs claim to have purchased the property at a foreclosure sale; the validity of which is absolutely denied by the Defendant, which purchase was made "As Is", which includes no legal or equitable claim, right, interest, lien, encumbrance or title at all.  Fraud cannot be the basis of good title.

4.   Plaintiff's claim of right to Defendant's property is derived from a forged Corporate Assignment of the Deed of Trust recorded in the Orange County Recorder's Office with Instrument number 2012000810439 and dated December 28, 2012. **[See Corporate Assignment Exhibit 1]**

5.   This Corporate Assignment has a forged signature of Michael R. McElwee, alleged Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a stranger to Defendant's "DOT".

6.   MERS was SUSPENDED from the Secretary of State to transact business in the State of California in 2004 and 2005 and could not enter into any contract for failing to pay its taxes to the franchise tax board. **[see MERS Suspension Exhibit 2]**

7.   MERS could not represent BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION in the CORPORATE ASSIGNMENT OF DEED OF TRUST dated December 6, 2012 because BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION had surrendered all rights and privileges to transact business in the State of California. **[see Bear Stearns Surrender Exhibit 3]**

8.    Michael R. McElwee's signature is allegedly notarized by Louisiana notary Helen P. Tubbs. **[see Helen P. Tubbs's notary application signature Exhibit 4]**

9.    Defendant has seen reports that state the signatures on CORPORATE ASSIGNMENT OF DEED OF TRUST can be confidently disputed as suspicious and fraudulent, and the Defendant has access to Expert Documentation Examiners.

10.    (Yvanova, supra, 62 Cal.4[th] at p. 928.) Our high court decided that question as follows: **"We conclude a home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable, but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale."** (Id. at pp. 942-943.)

11.    Plaintiff's claim of right to bring this claim against Defendant is challenged and disputed.

12.    Defendant states that Plaintiffs have no secured or unsecured right, title, interest, authority and otherwise or the like in the Property, Note and Deed Of Trust and has no right or authority to bring this unlawful detainer action.

## AFFIRMATIVE DEFENSES
### Second Affirmative Defense
### California Evidence Code §403 -Insufficient Evidence

13.    Defendant alleges that any exhibits that Plaintiffs may offer or move to introduce into evidence for identification are completely insufficient to support any alleged claim of Plaintiff's that 'sale' was conducted in 'compliance' with Civil Code Section 2924 et. seq.; that title was 'duly perfected'; that as a result of that 'sale', Plaintiffs have an immediate right of possession.

14.    Defendant alleges that secondary evidence of the content of such exhibits from Plaintiffs are inadmissible as hearsay, do not qualify as an exception to the hearsay rule, cannot be received in evidence and that the factual matters stated therein, the truthfulness, and proper interpretation thereof, is in dispute, and cannot be judicially noticed by the trial court.

15.    Defendant alleges that at no time did the power of sale allegedly conferred upon MTC FINANCIAL INC., dba TRUSTEE CORPS under that certain Deed of Trust recorded on

**March 24, 2006** in the Official Records at the Orange County Clerk-Recorder Department in the State of California, described as Instrument Number: **2006000196176**. Nor did, **TRUSTEE CORPS** have and authority whatsoever to execute a deed.

**16.**  Defendant alleges that at no time, was there a contractual provision, under her Deed of Trust, or otherwise and the like, wherein any right of possession passed or would pass to the trustee or beneficiary there under **TRUSTEE CORPS,** nor was **TRUSTEE CORPS** ever Defendant's agent and otherwise or the like.

### Third Affirmative Defense
### (Fails to State a Cause of Action)

**17.**  The complaint on file herein, and each and every allegation contained therein, fails to state a cause of action against this Answering Defendant.

**18.**  Plaintiffs have the Burden to provide evidence sufficient to meets its preliminary fact, and that evidence is inadmissible unless the court finds evidence sufficient to meet its preliminary fact. California Evidence Code §403.

**19.**  Plaintiff's allegations are contained in the following paragraphs of the complaint:

    A.  Paragraph 4: *"On 03/16/2018 Plaintiff became the owner of real property by purchasing said property at a foreclosure sale."* This allegation is disputed as lacking foundation, lacking firsthand personal knowledge, lacking any evidence in support of allegation and is objected to as hearsay.

    B.  Paragraph 5: *"Title under this sale has been duly perfected."*  This allegation is disputed as lacking foundation, lacking firsthand personal knowledge, lacking any evidence in support of allegation and is objected to as hearsay.

    C.  Paragraph 6: *"Pursuant to the recitations contained within the Trustee's Deed Upon Sale, the foreclosure sale, and all required notices were accomplished in compliance with CC §2924 et.seq.."* This allegation is disputed as lacking foundation, lacking firsthand personal knowledge, lacking any evidence in support of allegation and is objected to as hearsay.

D. Paragraph 8: *"The Real Property as stated above is located at: 593 N Milford Street, Orange, CA 92867."* This allegation is disputed as lacking foundation, lacking firsthand personal knowledge, lacking any evidence in support of allegation and is objected to as hearsay.

E. Paragraph 11: *"Defendants' title, if any, to said premises, that existed prior to the date of sale, was extinguished by said sale."* This allegation is disputed as lacking foundation, lacking firsthand personal knowledge, lacking any evidence in support of allegation and is objected to as hearsay.

F. The Trustee's Deed Upon Sale is disputed as lacking foundation, lacking firsthand personal knowledge, lacking any evidence in support of allegation and is objected to as hearsay. As to establishing facts by judicial notice; it is well recognized that courts may take notice of the existence and wording of recorded documents, but not the disputed or disputable facts stated therein. (Yvanova, supra, 62 Cal.4th at p. 924, fn. 1; Herrera v. Deutsche Bank National Trust Co. (2011) 196 Cal.App.4th 1366, 1375 (Herrera).)

G. Paragraph (7, 9, 10, and 12) are disputed as lacking foundation, lacking firsthand personal knowledge, lacking any evidence in support of allegation and are objected to as hearsay.

Plaintiffs have failed to meet its burden of proof.

## Fourth Affirmative Defense
### (Foreclosure sale does not Comply with CC §2924 et. seq)

**20.** Defendant/Borrower/Trustor's Deed of Trust **["DOT" Exhibit 5]** is a contractual agreement whereby the Defendant/Borrower/Trustor agreed to transfer bare legal title of her home to the Trustee as security for repayment of her loan, with the Trustee empowered by the "power to sell" clause to sell the property in the event of Borrower/Trustor's default. The "DOT" further sets forth the manner and method in which a Substitute Trustee is appointed on page 13 of "DOT".

**21.**  If a successor Trustee is appointed by Lender, he succeeds to title, powers and duties of the prior Trustee, thus the substitution is a transfer of interest in real property. The "DOT" discloses that **TRANSUNION TITLE INSURANCE** is the original Trustee; **BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION**, is the original Lender; and Defendant, **Susan Ganiere, an unmarried woman** is the original Borrower/Trustor, with the Borrower and Lender agreeing in "DOT": "Definitions" §24 *"**Substitute Trustee. Lender**, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by **Lender** and recorded in the office of the Recorder of the county in which the Property is located. **The instrument shall contain the name of the original Lender, Trustee and Borrower**, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. **This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution**".

**22.**  This is a contractual provision of the "DOT", the same as the "power to sell" clause is. In Bank of America v. La Jolla Group 11 (2005) 129 Cal.App.4th 706 [28 Cal.Rptr.3d 825], the Court of Appeals held that if a trustee is not contractually empowered under the "DOT" to hold a sale, it is totally VOID. It has no legal effect whatsoever. Title does not transfer. [see Dimock v. Emerald Properties (2000) - 81 Cal. App. 4th 868] An illegal trustee is a void sale under contract of deed of trust.

**23.**  Plaintiffs fail to provide any proof that TRUSTEE CORPS replaced the original Trustee, TRANSUNION TITLE INSURANCE, as the Substituted Trustee.

**24.**  "Definitions"§24 in the "DOT", Substitution of the Trustee of the "DOT" only allows the original Lender to substitute the trustee."

**25.**  Because the first break in Defendant's chain of Title started on December 28, 2012 with the creation of the Corporate Assignment of Deed of Trust, all subsequent Assignment, Notice of Default, Notice of Trustee's Sale and the Trustee's Deed Upon Sale are VOID.

26.  Plaintiffs have failed to comply with contractual terms of the Deed of Trust, failed to prove that TRUSTEE CORPS was in fact the legal trustee and thus is not in accordance with Civil Code § 2924 or Defendant's "DOT", and failed to show it "perfected title". On the face of the record, it is an illegal Trustee Sale the same as in Dimock v. Emerald Properties (2000) 81 Cal.App.4th 868 [97 Cal.Rptr.2d 25 5] which was followed in Lona v. Citibank, NA. (2011) 202 Cal.App.4th 89 in finding that tender is not required when the sale is based on legal issues [fraud, illegal trustee], rather than equitable issues.

27.  The Court must follow the recent case of The Bank of New York Mellon v. Vidal Preciado 224 Cal.App. 4th Supp 1 [hereafter referred to as Preciado]. In Preciado the Trial Court held the "Trustee's Deed Upon Sale was good enough for him", however the Appellate Division reversed the lower Court's holding on the last page of its decision, that a Plaintiff in an Unlawful Detainer action has to prove up the chain of Trustee from the Deed of Trust to the Trustee's Deed Upon Sale, as well as prove up the chain of the Beneficiary, in order to prove that Plaintiff has met its burden to prove it has complied with Civil Code §2924 et seq., and that title has been "duly perfected title". This court must follow the Doctrine of Stare Decisis.

28.  In Auto Equity Sales, Inc. v. Superior Court (Hesenflow) (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321,369 P.2d 93 7J our Supreme Court held at Head Note [5] the Appellate Division had exceeded its authority by not following the decision of the Court of Appeals, where the Appellate decision said the Court of Appeal ruling was erroneous, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. It is not their function to challenge the decisions of a court of superior jurisdiction.

29.  Therefore all those who allegedly claim under this author, through the "DOT" are void. Thus the Plaintiffs cannot ever perfect title.

30.  Thus there was no default, no notice of trustee sale, nor a trustee's deed upon sale, and the damages owed Defendant far exceeds the amount the Plaintiffs claim to have paid for property, and based on all of the above, title to the property cannot ever be perfected in the Plaintiff.

**31.** This Deed of Trust shall be referred to in these Affirmative Defenses, and the Answer, which these Affirmative Defenses are a part of, just as the "DOT".

### Fifth Affirmative Defense

### (Failure to Comply with 2923 et seq. )

**32.** Defendant incorporates her Affirmative Defenses alleged herein above, as if set forth and pleaded at length herein. Without waiving these positions, and solely to raise this defense, assuming there is a valid trustee's deed, **which is absolutely denied**, the Complaint for Unlawful Detainer on file herein and the whole thereof fails due to failure to comply with the statutes. which govern a foreclosure.

**33.** A non-judicial foreclosure sale is a creature of statute. (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334 [85 Cal. Rptr. 3d 532] [—The Civil Code contains a comprehensive statutory scheme regulating non-judicial foreclosure.] The trustee's role in preparing for and conducting the sale is set forth in detail in Civil Code section 2924 et seq.

**34.** In *California Golf*, the court noted that —California courts have repeatedly allowed parties to pursue additional remedies for misconduct arising out of a non-judicial foreclosure sale, when not inconsistent with the policies behind the statutes.‖ (*Id. at p. 1070.*)

**35.** Defendant is informed and believes, and thereon alleges, the foreclosure sale of Defendant's property that forms the source of the Trustee's Deed Upon Sale, which Plaintiffs claim is the basis of its right to possession as alleged in Plaintiff's Complaint for Unlawful Detainer on file herein, is illegal, unenforceable, and contrary to public policy.

**36.** Defendant is informed and believes and thereon alleges, that Plaintiffs failed to comply with the provisions of the California Civil Code, including but not limited to California Civil Code § 2923, §2015.5,§ 2923.5, §2924 et seq, including but not limited to §2932.5, §2934a, 2941.9; including but not limited to the Plaintiffs failed to provide all the notices as required by law, without limitation, by failing to file the mandatory declarations to be added or attached to the Notice of Default, and the mandatory declaration required to be attached to the Substitution of Trustee, that the sale was authorized and conducted by the order or request of more than

50% of all the beneficiaries of the note, or the deed of trust, which failure is also a violation

definitions number 24 of the contractual terms contained in the "DOT" which defines who can

Substitute the Trustee; and the interpretation of the "DOT" is interpreted against the author of

the Deed of Trust that was allegedly foreclosed upon, which author was BEAR STEARNS

RESIDENTIAL MORTGAGE CORPORATION, and all those that claim under this document,

and all the further documents used in the foreclosure [i.e. the  Assignments of the Deed of Trust

("ADOT"), the Substitution of Trustee ("SOT"), Notice of Default ( "NOD"), the, Notice of

Trustee Sale ("NTS"), the Trustee's Deed Upon Sale ("TDUS") ] which documents the

Plaintiffs ultimately claim under.

**37.**  TRUSTEE CORPS, As alleged Trustee and other unknowns have created and or

fabricated fraudulent and forged documents in their blatant disregard of the law and this court in

violation of CPC §115, §115.5, §118, §470, §132 and §535.

535. Every person who obtains any money or property from another, or obtains the signature
of another to any written instrument, the false making of which would be forgery, by means
of any false or fraudulent sale of property or pretended property, by auction, or by any of the
practices known as mock auctions, is punishable by imprisonment in a county jail not
exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by a
fine not exceeding two thousand dollars ($2,000), or by both that fine and imprisonment, and,
in addition, is disqualified for a period of three years from acting as an auctioneer in this
state.

### Sixth Affirmative Defense
### The Plaintiff's Predecessor Is Not the Predecessor in Interest)

**38.**  Defendant incorporates her Affirmative Defenses alleged herein above, as if set forth

and pleaded at length herein.  Without waiving these positions, and solely to raise this defense,

the Complaint for Unlawful Detainer an the whole thereof, fails, as the persons and entities who

claimed the right to foreclose on Defendant's property, and which Plaintiffs claim to take under

pursuant to the "TDUS" and who claimed and/or claimed to be the owner of the beneficial

interest or agent of the owners of the beneficial interest of the promissory note and "DOT" did

not acquire the rights under the "DOT", and each such purported rights are not admitted and

each absolutely denied, as BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION,
was not the creditor or funding source of the "DOT" and BEAR STEARNS RESIDENTIAL
MORTGAGE CORPORATION "SURRENDERED" any and all of its rights to transact intra
state business in the State of California on June, 2009. **[see Bear Stearns Surrender Exhibit 3]**
Thus there are no identifiable beneficiaries who could authorize the sale, nor substitute the
trustee, and Plaintiffs cannot ever perfect its title.

39. The following lists of documents are fabricated forgeries, in violations of statutes,
violation of rules of law, and illegality;

    a.  The Corporate Assignment of Deed of Trust recorded in the Orange County
Recorder's Office with Instrument number 2012000810439 dated December 28,
2012.

    b.  This Corporate Assignment has a forged signature of Michael R. McElwee, alleged
Asst. Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR BEAR STEARNS RESIDENTIAL MORTGAGE
CORPORATION; a stranger to Defendant's "DOT".

    c.  MERS was not the Nominee for BEAR STEARNS RESIDENTIAL MORTGAGE
CORPORATION, because it could not enter into any contract in 2004, 2005, due
non-payment of taxes and BEAR STEARNS RESIDENTIAL MORTGAGE
CORPORATION "SURRENDERED" its rights and privileges to transact intra state
business in the State of California on June 2, 2009.

    d.  Michael R. McElwee's signature is allegedly notarized by Louisiana notary Helen P.
Tubbs.

    e.  Due to this break in Defendant's Chain of Title, there was never any assignment to
any other financial institution giving any rights, powers, privileges or authority to
do business in the State California per Defendant's "DOT".

40. The Assignment was created with forged signatures and without authority.
Under California law, to "perfect" the transfer of mortgage paper as collateral the owner must
physically deliver the note to the transferee, as well. *Bear v. Golden Plan of California, Inc.*

829 F.2d 705, 709 (9th Cir. 1986) (Emphasis added). Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance. Cal. Civ. Code §3440, or as UNPERFECTED, Cal. Com. Code §§9313-9314. (Emphasis added).

"It is well established law in the 9th Circuit that the assignment of a trust deed does NOT assign the underlying promissory note and right to be paid, and that the security interest is incident of the debt." *4 Witkin Summary of California Law, Secured Transactions In Real Property* § 105 (10th ed).

   **a.** The Note and Mortgage are Inseparable, if the deed of trust was assigned without the note, then the assignee, having no interest in the underlying debt or obligation, has a worthless piece of paper. "Restatement (Third) of Property Mortgages §5.4 cmt. E (1997) **"The note and the mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."** *Carpenter v. Longan,* 83 U.S. 271, 274 (1872); accord *Hanley v. Hotaling,* 41 Cal, 22, 28 ( 1871 )~ *Seidell v. Tuxedo Land Co.,* 216 Cal. 165, 170 ( 1932)~ Cal. Civ. Code §2936. Therefore, if one party receives the note and another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred. *Adler v. Sargent,* 109 Cal. 42, 49-50 ( 1895).

   **b.** There is no legal valid Substitution of Trustee.

   **c.** Void Notice of Default recorded on January 29, 2013 with instrument number 2013000057543 allegedly created by TITLE TRUST DEED SERVICE COMPANY allegedly signed by Arlene Behr, Manager, an unknown entity and or person without any authority. **[see "NOD" Exhibit 6]**

   **d.** The Void Notice of Trustee Sale recorded on June 28, 2016 with instrument number 2016000291653 an unknown requested the recording and the "NOD" was allegedly signed by Miguel Ochoa, Authorized Signatory is false and without authority to record this document. **[see "NOTS" Exhibit 7]**

41. The Trustee's Deed Upon Sale is void due to the forged documents above.

42. Defendant also objects to the recital in the Trustee's Deed Upon Sale at the fourth
paragraph: **All requirements of law and of said Deed of Trust relating to this sale and to
notice thereof having been complied with. Pursuant to the Notice of Trustee's Sale, the
above described property was sold by Trustee (or Successor Trustee) at public auction on
March 16, 2018, at the place specified in said Notice, to Grantee who was the highest
bidder therefore, for $510,000.00 cash, in lawful money of the United States, which has
been paid**. This recital is disputed and objected under Evidence code 1200; Hearsay, lacking
foundation, lacking any evidence to support this statement.

43. Further the signatures of one or more of the persons signing the foreclosure documents
are forged, including but not limited to that of the, "CADOT", "NOD", "NOTS" and the
"TDUS", and are Void, and all documents that follow them are VOID.

44. The Court in Wutzke v. Bill Reid Painting Service, Inc. (1984) 151 Cal.App.3d  36, 43
[198 Cal.Rptr. 418] at head note 3held:)  " [3] When a deed is void ab initio, it "constitutes a
nullity; as such it cannot provide the basis for a superior title as against the original {Page 49
Cal.App.4th 585} grantor. [Citations.] "'A void deed passes no title and cannot be made the
foundation of a good title even under the equitable doctrine of bona fide purchase.' " ( Erickson
v. Bohne (1955) 130 Cal.App.2d 553, 557 [279 P.2d 619], quoting 26 C.J.S. at pp. 307-308.)

45. In the recent 2012 case of La Jolla Group II v. Bruce (2012) 211 Cal.App.4th 461 the
Court held at head note 11 on page 478:

"[11] ".... "Although the law protects innocent purchasers and encumbrance's, that protection
extends only to those who obtained good {Page 211 Cal.App.4th 478} legal title. [Citations.]
... [A] forged document is void ab initio and constitutes a nullity; as such it cannot provide
the basis for a superior title as against the original grantor.' [Citations.]" (Id. at pp. 379-380.)
A forgery includes "'a false making of a writing'" that "'falsely purports to be the writing of
another.'"

**46.** ..... Since the Assignment of deed of trust was a forgery and was void, appellants received no title by it. fn. 7 (Schiavon v. Arnaudo Brothers, supra, 84 Cal.App.4th at pp. 379-380.)"

**47.** Plaintiffs claim that it acquired title to property are all based on these forged, fraudulent, and void documents, and thus the sale is fraudulent, and good title cannot be based on fraud even as to a bona fide purchaser for value [Trout v. Trout, (1934), 220 Cal. 652). The entire foreclosure was illegal and not conducted pursuant to the terms of the "DOT" and the alleged Trustee lacked the power and authority to sell the property under the "DOT' and the Trustee Sale, including the Trustee's Deed Upon Sale is Void [see Bank of America v. La Jolla Group II (2005) 129 Cal.App.4th 706 [28 Cal.Rptr.3d 825] ], the alleged Trustee did not have the authorization from the owner of the beneficial interest of the promissory note to conduct the foreclosure, and thus was without the power to conduct the non-judicial foreclosure under the Deed of Trust; and thus lacked the power to enforce the promissory note nor the power to exercise the clause in the Deed of Trust to sell the real property which forms the subject matter of this action, nor to act as the Trustee, and the Notice of Default and the Notice of Trustee's Sale are Illegal and Void, not merely Voidable (Dimock v. Emerald 16 Properties (2000) 81 Cal. App. 4th 868 [97 Cal.Rptr.2d 255J ].

**48.** The above forging and falsifying of documents was done with the intent to defraud the Defendant. At all relevant times each participant knew the documents were being used to conduct an illegal foreclosure, and this constitutes forgery; each participant knew or realized, or should have known or realized that the other participants were engaging in or planned to engage in the violations of law described herein. Knowing or realizing that the other participants were engaging in such unlawful conduct, each participant nevertheless facilitated the commission of those unlawful acts. Each participant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other participants in the unlawful conduct. Altogether, the participants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law described above. The conspiracy, common enterprise, and common course of

1    conduct continue to the present. The alleged sale was conducted by using and recording of false,

2    forged, perjured statements, in violation of, including but not limited to Penal Code §470, §115,

3    §115.5, §118, §132 and §535.  As the documents used to conduct the foreclosure are false,

4    fraudulent, and forged. Plaintiffs cannot ever "perfect title" to the subject property, and thus

5    cannot state a cause of action for unlawful detainer as it cannot prove this element of a cause of

6    action for unlawful detainer.

7    **49.**  As the Assignments, Notice of Default and Notice of Trustee's Sale are void, and all the

8    documents that follow are void and they are themselves based on the same defective and void

9    documents, and Plaintiff's "TDUS" is void, unenforceable, and of nor force or effect. Legal and

10   equitable title to the disputed Property is still vested in the Defendant, and title to the property

11   cannot ever be duly perfected in the Plaintiffs.

## Seventh Affirmative Defense
### (The Plaintiffs are not A BFP Without Notice)

**50.**  Defendant incorporates her Affirmative Defenses alleged herein above, as if set forth
and pleaded at length herein.  Without waiving these positions, but solely to raise this defense,
and without waiving the defect that the Deed of Trust was void ab initio, as BEAR STEARNS
RESIDENTIAL MORTGAGE CORPORATION, failed to disclose its principals, the real
Creditor to the contract/"DOT".  BEAR STEARNS RESIDENTIAL MORTGAGE
CORPORATION "SURRENDERED" its rights and privileges to conduct business in the State
of California in 2007 before any assignments.

**51.**  The Complaint for Unlawful Detainer fails, as the sale is void, and Plaintiffs have
constructive notice of the defects, and the defects are apparent from the recorded documents.
Not only is the sale illegal which defeats a Bona Fide Purchaser for Value, Plaintiffs are not
even a Bona Fide Purchaser for Value Without Notice of defects in the title chain, which defects
renders the Trustee's Deed Upon Sale null and void, as the title on the face of the recorded
documents with the Orange County Recorder, has not been duly perfected, as it was obtained by
fraud in  violation of Penal Code § 470, § 115, § 118 and § 132.

52.  The alleged Trustee was an illegal Trustee with no power to conduct the sale, nor sell the property, as the Plaintiff's predecessor in interest failed to comply with the requirement of §2923 through § 2934a and under the definition 24 of the "DOT', in order to sell the property pursuant to the deed of trust failed to include the vote of more than 50% of the owners of the promissory note, and the Substitution of Trustee failed to include the declaration of more than 50% of the owner of the promissory note or deed of trust authorized the sale of the property, there must be a writing pursuant to Civil Code § 1624, § 2309 and § 2913, and TRUSTEE CORPS was not ever legally appointed Trustee, and thus it had no power to conduct the foreclosure including, but not limited to the Trustee's Sale, nor the power or authority to prepare and deliver a Trustee's Deed Upon Sale. The Trustee had in fact misrepresented it had the power to sell the Defendant's home when it did not, and thus intentionally misled the Defendant and others with the intent to defraud the Defendant, using false documents prepared by TRUSTEE CORPS, as it was illegally substituted as trustee without complying with California Civil Code § 2934a, § 1624, §2015.5,  §2309, and §2319, which (§ 2934a and the "DOT") requires a declaration attached to the Substitution of Trustee  of more than 50% of the beneficial owners authoring and instructing the legal trustee to sell the property, and give proof of mailing to the balance of the beneficial owners who did not sign the declaration. The Substitution of Trustee, the Notice of Trustee's Sale, the Trustee's Deed Upon Sale and this Trustee's conduct was and is therefore illegal, without power and the sale is absolutely void.

53.  The Plaintiffs are not a BFP, as Plaintiffs is charged with public notice in the recording statutes. See Gates Rubber Co. v. Ulman, (l989) 214 Cal. App. 3d 356, 364 where the court held that "the elements of bona fide purchase are payment of value, in good faith, and without actual or constructive notice of another's rights."   "The act of recording creates a conclusive presumption that a subsequent purchaser has constructive notice of the contents of the previously recorded document." See Melendrez v. D & Investment, Inc., (2005) 127 Cal.1711 App. 4th 1238.

54. Plaintiffs claim to have purchased the property at a foreclosure sale, the validity of which is absolutely denied by the Defendant, which purchase was made "As Is", which includes no legal or equitable claim, right, interest, lien, encumbrance or title at all.  Fraud cannot be the basis of good title.

### Eighth Affirmative Defense
### (Robo Signers / Forgery)

55. Defendant incorporates all of Defendant's prior Affirmative Defenses alleged herein above, as if set forth and pleaded at length herein.  Without waiving these positions, and solely to raise this defense, the Complaint for Unlawful Detainer on file herein,  and the whole thereof, fails as the "CADOT", "NOD", "NTS" and the "TDUS", were signed by, or rely on forged signatures, by someone falsely claiming to have the power to sign these documents who absolutely did not; by someone who knew absolutely nothing of the facts contained in these documents; and were notarized by someone claiming to be the notary who absolutely was not, or signed by the notary knowing the documents were not presented legally and properly for notarization with the person affixing their signature appearing physically in front of the notary in the moment of the person physically signing their name, applying their thumbprint to the notarial journal and verbally stating who or he or she was and what their true, correct capacity was in which they were appearing. Having failed to produce sufficient evidence to prove who these persons signing documents were, nor the prove of their true and correct capacity and authority upon which they could sign the documents, which conduct is sometimes referred to "robo-signing" and "robonotaries" declaring under penalty of perjury that the person signing the document is that person knowing that is it false and misleading, using these robo-signers and robo-notaries, the "CADOT", "NOD", "NTS", "TDUS" and all documents based on any of these documents are illegal, in violation of Penal Code § 470 (forgery), § 115 (recording of false documents), § 118 (perjury), § 132 and §535 (use of false documents in a court proceeding).

56. *See Preciado*, 224 Cal. App. 4th Supp. at 9 (in a CCP 1161a UD, a "plaintiff must show that he acquired the property at a regularly conducted sale and thereafter "duly perfected" his title"); Aurora Loan Servs., LLC v. Brown, 2012 WL 6213737, at *7 (Cal. App. Div. Super. Ct.

July 31, 2012) (linking invalid title with plaintiff's lack of standing to sue for possession); US Bank N.A. v. Espero, 2011 WL 9370474, at *4 (Cal. App. Div. Super. Ct. Dec. 27, 2011) (same)

> The trial court erred when it found that the Trustee's Deed Upon Sale was sufficient proof that Bank acquired the property at a regularly conducted sale and thereafter "duly perfected" its title. "[T]itle is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which she has purchased, valid and good beyond all reasonable doubt, which includes good record title, but is not limited to good record title, as between the parties to the transaction. The term 'duly' implies that all of those elements necessary to a valid sale exist, else there would not be a sale at all. (*Kessler v. Bridge* (1958) 161 Cal.App.2d Supp. 837, 841 [internal citations omitted]. (*See Preciado*, 224 Cal. App. 4th Supp. at 9

### Nineth Affirmative Defense
### Challenging Verification of the Complaint and
### Challenging Subject Matter Jurisdiction

**57.** The Complaint for Unlawful Detainer on file herein, and the whole thereof fails as it is unverified by a Real Party In Interest with Firsthand or Personal Knowledge of the subject matter contained in the complaint.

**58.** Defendant challenges the verification of the complaint by OLIVIA REYES who has no Firsthand Personal Knowledge of the subject matter before the court and cannot be a witness.

**59.** OLIVIA REYES signed the Verification on Information and Belief as an agent. **[see Verification Exhibit 8]**

**60.** Our Court of Appeals in Star Motor Imports, Inc. v. Superior Court, 88 Cal. App. 3d 201, has already decided that a Complaint made on Information and Belief is hearsay and Such allegations on "Information and Belief" furnish "no proof of the facts stated therein". (See Star Motor Imports, Inc. v. Superior Court.

**61.** Where the verification, or affidavit, is to be "used as evidence" of facts, " Section 446 [Code Civ. Proc.] does not apply." (Toboni v. Pennington Millnery Co., supra, p. 52.) [4] Matters alleged on "Information and Belief" do "not serve to establish the facts ... because an

affidavit which is to be used as evidence must be positive, direct and not based upon hearsay." (Gutierrez v. Superior Court, 243 Cal. App. 2d 710, 725 [52 Cal. Rptr. 592].)

**62.** **Without a proper verified complaint, the court lacks subject matter jurisdiction.**

**63.** In re. **STEEL CO., aka CHICAGO STEEL & PICKLING CO. v. CITIZENS FOR A BETTER ENVIRONMENT** CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT SUPREME COURT OF THE UNITED STATES No. 96—643. Argued October 6, 1997–Decided March 4, 1998:

> This Court declines to endorse the "doctrine of hypothetical jurisdiction," under which several Courts of Appeals have found it proper to proceed immediately to the merits question, despite jurisdictional objections, at least where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied. That doctrine carries the courts beyond the bounds of authorized judicial action and thus offends fundamental separation-of-powers principles. In a long and venerable line of cases, this Court has held that, without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit. See, e.g., *Capron* v. *Van Noorden*, 2 Cranch 126; *Arizonans for Official English* v. *Arizona*, 520 U. S. ___, ___. *Bell* v. *Hood*, *supra*; *National Railroad Passenger Corp.* v. *National Assn. of Railroad Passengers*, 414 U. S. 453; *Norton* v. *Mathews*, 427 U. S. 524; *Secretary of Navy* v. *Avrech*, 418 U. S. 676 *(per curiam); United States* v.*Augenblick*, 393 U. S. 348; *Philbrook* v. *Glodgett*, 421 U. S. 707; and *Chandler* v. *Judicial Council of Tenth Circuit*, 398 U. S. 74, distinguished. For a court to pronounce upon a law's meaning or constitutionality when it has no jurisdiction to do so is, by very definition, an *ultra vires* act. Pp. 8–17

**64.** Wherefore Defendant objects to the complaint being entered into evidence under California Evidence Code 1401(a)(b).

**65.** The Complaint remains unverified by a Real Party In Interest that has any firsthand personal knowledge of the allegations.

**66.** The entire complaint falls under the hearsay rule and is objected to on the whole thereof.

Defendant rebuts any hypothetical jurisdiction this court presumes it may think it has as to an unverified complaint before it.

**Therefore, Defendant Challenges Subject Matter Jurisdiction.**

**A.** Lack of jurisdiction in its strict sense means an entire absence of power to hear or determine a case, an absence of authority over the subject matter [*see* Abelleira v. District

Court of Appeal (1941) 17 Cal. 2d 280, 287-288, 109 P.2d 942 ; Schwenke v. J & P Scott, Inc.
(1988) 205 Cal. App. 3d 71, 76, 252 Cal. Rptr. 91] .

**B.** The judgment of a court lacking jurisdiction over the subject matter is void [*see* Kulko v.
California Superior Court (1978) 436 U.S. 84, 91, 98 S. Ct. 1690, 56 L. Ed. 2d 132, 141 ;
Hanson v. Denckla (1958) 357 U.S. 235, 250, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 ; County of
Ventura v. Tillett (1982) 133 Cal. App. 3d 105, 110, 183 Cal. Rptr. 741 , *cert. denied,* 460 U.S.
1051 (1983 ) (disapproved on another point in County of Orange v. Soto (1984) 35 Cal. 3d
483, 492 n.4, 198 Cal. Rptr. 779, 674 P.2d 750 )].

**C.** A court's lack of subject matter jurisdiction is never waived and can be raised for the
first time on appeal [ Miranda v. 21st Century Insurance Co. (2004) 117 Cal. App. 4th 913,
920, 12 Cal. Rptr. 3d 159 ; Parrott v. Mooring Townhomes Assn. (2003) 112 Cal. App. 4th
873, 876, 6 Cal. Rptr. 3d 116] .

**D.** A judgment void on its face--because rendered when the court lacked subject matter
jurisdiction or exceeded its jurisdiction in granting relief--is subject to collateral attack at any
time [ Sindler v. Brennan (2003) 105 Cal. App. 4th 1350, 1353, 129 Cal. Rptr. 2d 888] .

# EXHIBIT 1
# CORPORATE ASSSIGNMENT OF DEED OF TRUST
# 2 PAGES

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING

[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 1023682503



Recorded in Official Records, Orange County
Renee Ramirez, Assistant Clerk-Recorder                    9.00

*R 0 0 0 5 4 6 7 4 6 6 5 *
2012000810439 10:04 am 12/28/12
47 405 A32  1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

## CORPORATE ASSIGNMENT OF DEED OF TRUST

CONTACT JPMORGAN CHASE BANK, N.A. FOR THIS INSTRUMENT 780 KANSAS LANE, SUITE A, MONROE, LA 71203, TELEPHONE # (866) 756-8747, WHICH IS RESPONSIBLE FOR RECEIVING PAYMENTS.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS PO BOX 2026, FLINT, MI, 48501** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS SUCCESSOR-IN-INTEREST TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II TRUST 2006-AR4, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR4, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **SUSAN GANIERE** and recorded on 03/24/2006 as Instrument # 2006000196176, in Book n/a, Page n/a in the office of the ORANGE County Recorder, CA.

Property is commonly known as: 593 N MILFORD ROAD, ORANGE, CA 92867.

Dated on _12 06_ /2012 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BEAR STEARNS RESIDENTIAL
MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS

By: _____
    _____
    ASST. SECRETARY

### ACKNOWLEDGEMENT

STATE OF LOUISIANA
PARISH OF OUACHITA
On _12 06_ /2012 (MM/DD/YYYY), before me appeared _MICHAEL R MCEWEE_, to me personally known, who did say that he/she/they is/are the ASST. SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
JPCAS 18592909 -6 EMC CJ44525214X  MIN 100386100002109551 MERS PHONE 1-888-679-6377  T0612120814   [C]
FRMCA1



*18592909*

DEFENDANT'S VERIFIED ANSWER - 28

3/21/2018
2.00



THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE:_____

CERTIFICATION FEE:_____

COUNTY CLERK-RECORDER

*Hugh Nguyen*

ORANGE COUNTY
STATE OF CALIFORNIA

Document Number: 2012000810439 Page: 2 of 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2
# MERS SUSPENSION BY CALIFORNIA SECRETARY OF STATE
# 4 PAGES

# State of California
## Secretary of State

CERTIFICATE OF STATUS

ENTITY NAME:

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. (MERS)

FILE NUMBER:       C2416221
FORMATION DATE:    05/21/2002
TYPE:              DOMESTIC CORPORATION
JURISDICTION:      CALIFORNIA
STATUS:            SUSPENDED

I, ALEX PADILLA, Secretary of State of the State of California,
hereby certify:

The records of this office indicate the Secretary of State suspended
the entity's powers, rights and privileges on November 09, 2004,
pursuant to the provisions of the California Corporations Code; the
California Franchise Tax Board suspended the entity's powers, rights
and privileges on December 01, 2005, pursuant to the provisions of
the California Revenue and Taxation Code; and the entity's powers,
rights and privileges remain suspended.



IN WITNESS WHEREOF, I execute this certificate
and affix the Great Seal of the State of
California this day of December 28, 2016.

**ALEX PADILLA**
**Secretary of State**

RYM

NP-25 (REV 01/2015)

2416221

# MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. (MERS)

## ARTICLES OF INCORPORATION

FILED
in the office of the Secretary of State
of the State of California

MAY 21 2002

BILL JONES, Secretary of State

### I.

The name of this corporation is MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. (MERS)

### II.

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the GENERAL CORPORATION LAW of California other than the banking business, the trust company business or the practice of a profession not permitted to be incorporated by the California Corporations Code.

### III.

The name and address in the State of California of this corporation's initial agent for service of process is:

> Al Seastrand
> 2216 16th Street
> Sacramento, CA 95818

### IV.

This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is 1,000.

_____  5/20/02

Al Seastrand

MERS ArticlesIncorp

RO050442



**State of California**
Secretary of State

RA-100

**RESIGNATION OF AGENT**
**UPON WHOM PROCESS MAY BE SERVED**

**FILED** *ce'*
In the Office of the Secretary of State
of the State of California

**MAR 2 5 2009**

There is no fee for filing this form.

IMPORTANT – Read instructions before completing this form.    *EC*    This Space For Filing Use Only

**ENTITY TYPE** (Identify the type of business from which you are resigning as agent for service of process. Check only one box.)

1. [X] CORPORATION (domestic or qualified foreign)

   [ ] LIMITED LIABILITY COMPANY (domestic or registered foreign)

   [ ] LIMITED PARTNERSHIP (domestic or registered foreign)

   [ ] LIMITED LIABILITY PARTNERSHIP (domestic or registered foreign)

   [ ] REGISTERED GENERAL PARTNERSHIP

   [ ] UNINCORPORATED ASSOCIATION

   [ ] FOREIGN PARTNERSHIP (other than a foreign limited partnership)

   [ ] FOREIGN ASSOCIATION

**ENTITY NAME** (Enter the name of the entity from whom you are resigning as agent for service of process.)

2. Mortgage Electronic Registration System, Inc. (MERS)

**ENTITY FILE NUMBER** (Enter the file number issued to the above-named entity by the Secretary of State.)

3. C2416221

**JURISDICTION** (Enter the jurisdiction (state or country) under which the above-named entity was organized.)

4. CA.

**STATEMENT OF RESIGNATION** (The following statement declares intent to resign as agent for service of process and should not be altered.)

5. THE UNDERSIGNED HEREBY RESIGNS AS AGENT UPON WHOM PROCESS MAY BE SERVED IN CALIFORNIA FOR THE ABOVE-NAMED ENTITY.

**EXECUTION**

6. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED

3/10/09
DATE

Al Seastrand
TYPE OR PRINT NAME OF DECLARANT (i.e., the individual or corporation resigning as agent for service of process for the above-named entity)

SIGNATURE OF DECLARANT or SIGNATURE OF AUTHORIZED REPRESENTATIVE OF DECLARANT (if declarant is a corporation)

Agent for Service of Process
TITLE OF OFFICE OF AUTHORIZED REPRESENTATIVE OF DECLARANT (If declarant is a corporation)

RA-100 (REV 01/2008)    *I - REC*    APPROVED BY SECRETARY OF STATE



I hereby certify that the foregoing
transcript of _____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

DEC 2 2 2016

Date: _____

ALEX PADILLA, Secretary of State

1
2
3
4
5
# EXHIBIT 3
# BEAR STEARNS RESIDENTIAL MORTGAGE
# CORPORATION SURRENDER
# TO
# CALIFORNIA SECRETARY OF STATE
# 1 PAGE

19 17381

**FILED**
In the Office of the Secretary of State
of the State of California

JUN -2 2009

## CERTIFICATE OF SURRENDER OF RIGHT TO TRANSACT INTRASTATE BUSINESS

On behalf and by authority of:

Bear Stearns Residential Mortgage Corporation
_____
(Name of Corporation)

_____ , a corporation

organized under the laws of  Delaware _____
(State or Place of Incorporation)

the undersigned officer of said corporation does hereby certify and declare:

1. Said corporation hereby surrenders its right and authority to transact intrastate business in the State of California.

2. Said corporation hereby revokes its designation of agent for service of process in California.

3. Said corporation consents that process against it in any action upon any liability or obligation incurred within the State of California prior to the filing of this Certificate of Surrender of Right to Transact Intrastate Business may be served upon the California Secretary of State.

4. The post office address to which the California Secretary of State may mail copies of any process against the corporation that is served upon the Secretary of State is

c/o JPMorgan Chase & Co., Attn: Office of the Secretary, 4 Chase Metrotech, Floor 03, Brooklyn, NY 11245
_____

_____

5. A final franchise tax return, as described by Section 23332 of the Revenue and Taxation Code, has been or will be filed with the Franchise Tax Board, as required under Part 10.2 (commencing with Section 18401) of Division 2 of the Revenue and Taxation Code.

_____
(Signature of Corporate Officer)

Colleen A. Meade, Vice President
_____
(Type or Print Name of Corporate Officer)

Secretary of State Form
SURRENDER-CORPORATION (REV 01/2007)

CA056 - 1/10/2007 C T System Online

1
2
3
4
5

# EXHIBIT 4
## NOTARY HELEN P. TUBBS NOTARY
## APPLICATION SIGNATURE
## 6 PAGES

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**STATE OF LOUISIANA**
OFFICE OF THE GOVERNOR
BATON ROUGE

EDWIN EDWARDS
GOVERNOR

8/04/93

MOREHOUSE

Hon. Fox McKeithen
Secretary of State
Baton Rouge, Louisiana
Dear Mr. McKeithen
    Please issue commission to the following:

HELEN P. TUBBS
10382 STATES
BASTROP, LA  71220

NOTARY PUBLIC IN AND FOR THE PARISH OF  MOREHOUSE

(*)

Yours very truly,                                    112890

_Edwin Edwards_

Governor of Louisiana

Office of Secretary of State,
Baton Rouge, LA

Commission issued this day and countersigned by:

_Fox McKeithen_

Secretary of State.

| Record Received from Governor | | Cash Receipt Acknowledged | |
|---|---|---|---|
| Prepared and Returned to Governor | | Computer Updated | |
| Received with Governor Signature | | Roster Revised | |
| Returned to Governor Completed | | Other | |

S.S 979

P1995-006
Doc. 16124

Prepared and Furnished by
Fox McKeithen
Secretary of State

DATII–SS–40I (R 3/88)
(See instructions at bottom)

# OATH OF OFFICE

STATE OF LOUISIANA

Parish of __Morehouse__

I, __Helen P. Tubbs__ _____ do solemnly swear (or affirm) that I will support the Constitution and Laws of the United States and the Constitution and Laws of this State and that I will faithfully and impartially discharge and perform all the duties incumbent on me as:

NOTARY

(SPECIFY TITLE OF OFFICE TO WHICH YOU WERE APPOINTED OR ELECTED)

according to the best of my ability and understanding, so help me God.

Sworn to and subscribed before me this

__28th__ day of __July__ A.D., 19 __93__

_Elaine F. Bryan_
SIGNATURE OF OFFICIAL ADMINISTERING OATH

_Deputy Clerk_
TITLE OF OFFICIAL ADMINISTERING OATH

Mr.
Mrs.    _Helen Tubbs_
Miss    SIGNATURE

10382 States
BUSINESS ADDRESS (FOR PUBLIC RECORD)

Bastrop, LA    71220
CITY                STATE        ZIP

AREA CODE        BUSINESS PHONE (FOR PUBLIC RECORD)

### PLEASE EXECUTE ACKNOWLEDGEMENT BELOW IF APPLICABLE

I hereby acknowledge receipt of the enclosed code of ethics as required by R.S. 42:1162.

_____
SIGNATURE

NOTE:    1.  If Commission is required to be issued, R.S. 42:141 provides as follows: Each public officer shall take and file his oath of office within thirty (30) days after receipt of commission. An oath taken prior to the date shown on the commission shall be deemed to have been taken on and shall be effective on and after the date on which the term of office for which the oath is taken commences. In cases where the office is one for which no date for term of office is set, an oath taken prior to the date on the commission shall be deemed to have been taken on and shall be effective on and after the date on the commission. Failure to comply with the requirements of this Section shall create a vacancy in the office, and the vacancy shall be filled in accordance with law as in other cases of vacancy.

2.  Original Oath of Office is filed with Secretary of State (P.O. Box 94125, Baton Rouge, LA 70804-9125)

3.  Duplicate oath is filed with Clerk of Court in case of Parish officials.

Louisiana                    DUPLICATE — FILE WITH THE SECRETARY OF STATE

# Western Surety Company

## NOTARY BOND

STATE OF LOUISIANA
PARISH OF __Morehouse__

KNOW ALL MEN BY THESE PRESENTS:                                    BOND No. N-52935201

That we, _____Helen Tubbs_____ as Principal,
and WESTERN SURETY COMPANY, a corporation duly licensed to do business in the State of Louisiana, as Surety, are held and firmly bound unto His Excellency, The Governor of the State of Louisiana, and to his successors in office, in the full sum of FIVE THOUSAND ($5,000.00) Dollars, for the payment of which, well and truly to be made, we bind ourselves and our legal representatives, jointly and severally by these presents.

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That if the said Principal shall well and faithfully discharge and perform the duties incumbent on him as a Notary Public for the

Parish of _____Morehouse_____, then this obligation shall be null and void, otherwise to remain in full force and effect. This bond covers a 5 year period beginning _____July 28, 1993_____ and ending _____July 28, 1998_____

Dated this _____28th_____ day of _____July_____ 19_93.

Witness

_Cheryl Larksley_                                    _Helen Tubbs_
_Lydnell Tanner_                                     Helen Tubbs                     Principal

Countersigned                                        W E S T E R N   S U R E T Y   C O M P A N Y

By _____                          By _____
        Louisiana Resident Agent                                                    President

I DO HEREBY CERTIFY, That this bond has been approved this _____28th_____ day of

_____July_____ 19_93.
                                                    _Lillian R. Boyd_
                                                    Custodian of Notarial Records — Orleans Parish
                                                    Clerk of Courts — all other parishes

I DO HEREBY CERTIFY, that the foregoing Bond with the endorsements thereon, has been filed in my office this _____ day of _____ 19____.

_____
Form approved by office of Secretary of State                    Secretary of State

Form 918 — 3-92                                     Western Surety Company
                                                    1-605-336-0850

## ACKNOWLEDGMENT OF SURETY
### (Corporate Officer)

STATE OF SOUTH DAKOTA  }
County of Minnehaha       } ss

On this _____18th_____ day of _____March_____, 19_92_, before me, a Notary Public in and for said County, personally appeared _____Joe P. Kirby_____ personally known to me, who being by me duly sworn, did say that he is the aforesaid officer of WESTERN SURETY COMPANY, a corporation duly organized and existing under the laws of the State of South Dakota, that the seal affixed to the foregoing instrument is the corporate seal of said corporation, that the said instrument was signed, sealed and executed in behalf of said corporation by authority of its Board of Directors, and further acknowledge that the said instrument and the execution thereof to be the voluntary act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

S. BARNES
NOTARY PUBLIC
SOUTH DAKOTA
SEAL        SEAL
My Commission Expires 1-22-59

_S. Barnes_
Notary Public

h2171

EXECUTED IN DUPLICATE

Louisiana

# Western Surety Company

### NOTARY BOND

**STATE OF LOUISIANA**

**PARISH OF** Morehouse

**KNOW ALL PERSONS BY THESE PRESENTS:**                    Bond No. 52935201N

That we, Helen Tubbs ,
as Principal, and WESTERN SURETY COMPANY, a corporation duly licensed to do surety business in the State of Louisiana, as Surety, are held and firmly bound unto His Excellency, The Governor of the State of Louisiana, and to his successors in office, in the full sum of TEN THOUSAND _____ DOLLARS ( $10,000.00 ), for the payment of which, well and truly to be made, we bind ourselves and our legal representatives, jointly and severally by these presents.

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That if the said Principal shall well and faithfully discharge and perform the duties incumbent on him as a Notary Public for the Parish of Morehouse then this obligation shall be null and void, otherwise to remain in full force and effect. This bond covers a 5 year period beginning _____ July 28, 2008 _____ and ending _____ July 28, 2013 _____.

Dated this _____ 19 day of _____ May , 2008

Witness

Helen P. Tubbs
Principal

10382 State St., Bastrop LA 71220
Principal's Address

W E S T E R N   S U R E T Y   C O M P A N Y

By _____
Paul T. Bruflat, Senior Vice President

I DO HEREBY CERTIFY, That this bond has been approved this _____ 2nd _____ day of
July , 2007 .

_____
Custodian of Notarial Records - Orleans Parish
Clerk of Courts - all other parishes

I DO HEREBY CERTIFY, That the foregoing Bond with the endorsements thereon, has been filed in my office this _____ day of _____

_____
Secretary of State

Form 915-A-7-2003                    Form approved by office of Secretary of State

## ACKNOWLEDGMENT OF SURETY
(Corporate Officer)

STATE OF SOUTH DAKOTA }

County of Minnehaha } ss

On this ___10th___ day of ____July____, __2003__, before me, a Notary Public in and for said County, personally appeared __Paul T. Bruflat__ personally known to me, who being by me duly sworn, did say that he is the aforesaid officer of WESTERN SURETY COMPANY, a corporation duly organized and existing under the laws of the State of South Dakota, that the seal affixed to the foregoing instrument is the corporate seal of said corporation, that the said instrument was signed, sealed and executed in behalf of said corporation by authority of its Board of Directors, and further acknowledge that the said instrument and the execution thereof to be the voluntary act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

S. EICH
NOTARY PUBLIC
SEAL    SOUTH DAKOTA    SEAL

My Commission Expires February 12, 2009

_S. Eich_
Notary Public

P2001-003
100: 51795

# EXHIBIT 5
## DEFENDANT'S DEED OF TRUST
## 22 PAGES

TRANSUNION TITLE & ESCROW OF CALIFORNIA, INC.

Recording Requested By:
**Bear Stearns Residential
Mortgage Corporation**

Return To:
**Bear Stearns Residential
Mortgage Corporation
9201 E. Mountain View Road,
Suite 210
Scottsdale, Arizona 85258**

Prepared By:
**9201 E. Mountain View Road,
Suite 210
Scottsdale, AZ 85258**

OR # E1403254-12
APN # 383-113-01

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

66.00

2006000196176 04:30pm 03/24/06
124 51 D11 21
0.00 0.00 0.00 0.00 60.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
SOCAL
ON BEHALF OF: SOC

[Space Above This Line For Recording Data]

## DEED OF TRUST

MIN 100386100002109551

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **March 17, 2006**
together with all Riders to this document.
**(B) "Borrower"** is **Susan Ganiere, an unmarried woman**

Borrower's address is **1137 West Palmyra Avenue, Orange, CA 92868**
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Bear Stearns Residential Mortgage Corporation**

Lender is a **Corporation**
organized and existing under the laws of **The State of Delaware**

14442206                                                                    14442206

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005 1/01

VMP®-6A(CA) (0207)
Page 1 of 15                        Initials:
VMP MORTGAGE FORMS - (800)521-7291

Document Number: 2006000196176 Page: 1 of 22

Lender's address is **9201 E. Mountain View Road, Suite 210, Scottsdale, AZ 85258**

(D) "Trustee" is **TransUnion Title Insurance**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **March 17, 2006**
The Note states that Borrower owes Lender **Four Hundred Sixty Four Thousand And Zero/100**    Dollars
(U.S. $ **464,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 01, 2036** .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | [x] Other(s) [specify] |
| | | **Prepayment Rider** |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

14442206    14442206

(vmp) -6A(CA) (0207)    Initials: ___    Page 2 of 15    Form 3005  1/01

Document Number: 2006000196176 Page: 2 of 22

DEFENDANT'S VERIFIED ANSWER - 46

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| | | |
|---|---|---|
| **County** | of | **Orange** : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

LOT 10 OF TRACT 2457, IN THE CITY OF ORANGE, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 80, PAGES 3 AND 4 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

Parcel ID Number: **383-113-01**                                which currently has the address of
**593 N Milford Road**                                                                              [Street]
**Orange**                                        [City], California **92867**          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

**14442206**                                                                                          **14442206**

VMP®-6A(CA) (0207)                          Page 3 of 15          Initials           Form 3005  1/01

Document Number: 2006000196176 Page: 3 of 22

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

14442206

VMP®-6A(CA) (0207)          Page 4 of 15          Initials: _____          14442206

Form 3005   1/01

DEFENDANT'S VERIFIED ANSWER - 48

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

14442206

VMP®-6A(CA) (0207)                          Page 5 of 15                    Initials: _____                    14442206

                                                                                                                Form 3005   1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

14442206

-6A(CA) (0207)                              Page 6 of 15                         Initials: _____           14442206

                                                                                               Form 3005   1/01

DEFENDANT'S VERIFIED ANSWER - 50

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

14442206

-6A(CA) (0207)                    Page 7 of 15                Initials _____                14442206

                                                                                            Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

14442206

-6A(CA) (0207)

Page 8 of 15

Initials

14442206

Form 3005   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

14442206

-6A(CA) (0207)                    Page 9 of 15                    Initials                    14442206

Form 3005   1/01

Document Number: 2006000196176 Page: 9 of 22